*Whitehead v. Twentieth Century Fox Film Corp., Inc.*
CIVIL ACTION NO. 1:05-cv-01462-GK

# DECLARATION OF
# JEANETTE MELENDEZ BEAD

# EXHIBIT 1
# (Part B)

[ Attachment 1 ]

# Wang & Associates
## Certified Public Accountants (CPAs)

Neng-Hsiang Wang, CPA
Ming J. Lee, CPA
606 Seventh Street, S.W.
Washington, DC 20024-2402

Phone (202) 479-0744 & (202) 554-4314
Fax (202) 479-4218

March 11, 2005

David Louis Whitehead
1717 K. St. N.W. Suite 600
Washington, DC 20036


Dear Mr. Whitehead:

Enclosed is my signed affidavit you requested regarding the work
I performed for you pertaining to the highly successful motion picture
entitled *The Passion of Christ* and *The Passion of Christ* products.
*See attached affidavit.*

Very truly yours,

Neng-Hsiang Wang, CPA


Enclosure:  Affidavit

Based on publicly available data, from the film *The Passion of Christ* from box office receipts, sales of videos, DVDs, books, music soundtrack, a to be released edited version DVD, and sale of products estimated over <u>One Billion Dollars.</u>

The motion picture studio's official records pertaining to the film *The Passion of Christ* and other *The Passion of Christ* products will probably be much higher than public records.

Neng-Hsiang Wang, CPA
Wang & Associates, CPAs

Notary

Washington, District of Columbia
Subscribed and sworn to before me, in my presence,
this _11_ day of MARCH , 2005
by NENG - HSIANG WANG
Jacqueline A. Hughes Notary Public
My commission expires 06-14-2007

2

Attachment 2

**FORM TX**
For a Literary Work
UNITED STATES COPYRIGHT OFFICE

REGISTRATION NUMBER

**CERTIFICATE OF REGISTRATION**

This Certificate issued under the seal of the Copyright Office in accordance with title 17, United States Code, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

**TXu 743-018**

*Marybeth Peters*

**REGISTER OF COPYRIGHTS**
United States of America

| May | 20, | 1996 |
|-----|-----|------|
| Month | Day | Year |

OFFICIAL SEAL

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**1** TITLE OF THIS WORK ▼

The Play God v. Satan

PREVIOUS OR ALTERNATIVE TITLES ▼

PUBLICATION AS A CONTRIBUTION If this work was published as a contribution to a periodical, serial, or collection, give information about the collective work in which the contribution appeared. **Title of Collective Work ▼**

If published in a periodical or serial give: **Volume ▼** | **Number ▼** | **Issue Date ▼** | **On Pages ▼**

**2** **a** NAME OF AUTHOR ▼

David L. Whitehead (Daoud)

DATES OF BIRTH AND DEATH
Year Born ▼ 1957 Year Died ▼

Was this contribution to the work a "work made for hire"?
[ ] Yes
[ ] No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
OR { Citizen of ▶ U S
{ Domiciled in ▶

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous? [ ] Yes [ ] No
Pseudonymous? [ ] Yes [ ] No
If the answer to either of these questions is "Yes," see detailed instructions.

NATURE OF AUTHORSHIP Briefly describe nature of material created by this author in which copyright is claimed. ▼
religions my based on all sources

NAME OF AUTHOR ▼

DATES OF BIRTH AND DEATH
Year Born ▼ Year Died ▼

Was this contribution to the work a "work made for hire"?
[ ] Yes
[ ] No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
OR { Citizen of ▶
{ Domiciled in ▶

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous? [ ] Yes [ ] No
Pseudonymous? [ ] Yes [ ] No

NATURE OF AUTHORSHIP Briefly describe nature of material created by this author in which copyright is claimed. ▼

NAME OF AUTHOR ▼

DATES OF BIRTH AND DEATH
Year Born ▼ Year Died ▼

Was this contribution to the work a "work made for hire"?
[ ] Yes
[ ] No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
OR { Citizen of ▶
{ Domiciled in ▶

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous? [ ] Yes [ ] No
Pseudonymous? [ ] Yes [ ] No

NATURE OF AUTHORSHIP Briefly describe nature of material created by this author in which copyright is claimed. ▼

081175496

**3** YEAR IN WHICH CREATION OF THIS WORK WAS COMPLETED This information must be given in all cases.
1995-96 ◀ Year

DATE AND NATION OF FIRST PUBLICATION OF THIS PARTICULAR WORK
Complete this information Month ▶ Day ▶ Year ▶
ONLY if this work has been published.

**4** COPYRIGHT CLAIMANT(S) Name and address must be given even if the claimant is the same as the author given in space 2. ▼

David L. Whitehead
1101 Westfield Dr. Oxon Hill, MD 20745

TRANSFER If the claimant(s) named here in space 4 is (are) different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright. ▼

APPLICATION RECEIVED
ONE DEPOSIT RECEIVED
TWO DEPOSITS RECEIVED
FUNDS RECEIVED

DO NOT WRITE HERE
OFFICE USE ONLY

MORE ON BACK ▶ • Complete all applicable spaces (numbers 5-11) on the reverse side of this page
• See detailed instructions • Sign the form at line 10

DO NOT WRITE HERE

Page 1 of 2

EXAMINED BY _Tms_____     FORM TX

CHECKED BY _____

☐ CORRESPONDENCE
  Yes

FOR
COPYRIGHT
OFFICE
USE
ONLY

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**PREVIOUS REGISTRATION** Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office?

Yes ☐ No ☐ If your answer is "Yes," why is another registration being sought? (Check appropriate box) ▼

☐ This is the first published edition of a work previously registered in unpublished form.

☐ This is the first application submitted by this author as copyright claimant.

☐ This is a changed version of the work, as shown by space 6 on this application.

If your answer is "Yes," give: **Previous Registration Number** ▼          **Year of Registration** ▼

**5**

**DERIVATIVE WORK OR COMPILATION** Complete both space 6a and 6b for a derivative work; complete only 6b for a compilation.

**Preexisting Material** Identify any preexisting work or works that this work is based on or incorporates. ▼

**Material Added to This Work** Give a brief, general statement of the material that has been added to this work and in which copyright is claimed. ▼

**6**

See instructions
before completing
this space.

—space deleted—

**7**

**REPRODUCTION FOR USE OF BLIND OR PHYSICALLY HANDICAPPED INDIVIDUALS** A signature on this form at space 10 and a check in one of the boxes here in space 8 constitutes a non-exclusive grant of permission to the Library of Congress to reproduce and distribute solely for the blind and physically handicapped and under the conditions and limitations prescribed by the regulations of the Copyright Office: (1) copies of the work identified in space 1 of this application in Braille (or similar tactile symbols); or (2) phonorecords embodying a fixation of a reading of that work; or (3) both.

a☐ Copies and Phonorecords          b☐ Copies Only          c☐ Phonorecords Only

**8**

See instructions.

**DEPOSIT ACCOUNT** If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.

Name ▼          Account Number ▼

**CORRESPONDENCE** Give name and address to which correspondence about this application should be sent.   Name/Address/Apt/City/State/ZIP ▼

David L. Whitehead
P.O. Box 78379  (301) 567.8262
Wash DC    Area Code and Telephone Number ▶

Be sure to
give your
daytime phone
◀ number

**9**

**CERTIFICATION\*** I, the undersigned, hereby certify that I am the

Check only one ▶

☑ author
☐ other copyright claimant
☐ owner of exclusive right(s)
☐ authorized agent of _____
          Name of author or other copyright claimant, or owner of exclusive right(s) ▲

of the work identified in this application and that the statements made
by me in this application are correct to the best of my knowledge.

**10**

Typed or printed name and date ▼ If this application gives a date of publication in space 3, do not sign and submit it before that date.

David L. Whitehead                          date ▶ May 16, 1996

☐ Handwritten signature (X) ▼

_David L. Whitehead_

**MAIL CERTIFICATE TO**

Name ▼
David L. Whitehead

Number/Street/Apartment Number ▼
1101 Westfield Dr.

City/State/ZIP ▼
Oxon Hill, MD 20745

**YOU MUST:**
• Complete all necessary spaces
• Sign your application in space 9

**SEND ALL 3 ELEMENTS IN THE SAME PACKAGE:**
1. Application form
2. Nonrefundable $20 filing fee in check or money order payable to Register of Copyrights
3. Deposit material

**MAIL TO:**
Register of Copyrights
Library of Congress
Washington, D.C. 20559-6000

\*17 U.S.C. § 506(e): Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.

June 1995—400,000 ♻ PRINTED ON RECYCLED PAPER          ☆U.S. GOVERNMENT PRINTING OFFICE: 1995-387-237/34

# A R E N A
# S T A G E

[Attachment 3]

June 6, 1996

Louis Whitehead
P.O. Box 76579
Washington, D.C. 20013

Dear Mr. Whitehead,

Thank you for sending Arena Stage *God vs. Satan.*

Though your play sounds intriguing, Arena Stage does not <u>focus</u> on developing new, unproduced work. Consequently, this has forced me to be *extremely* selective in terms of the scripts that we do choose to read. I am targeting writers of color, women writers, and writers with previously produced work at legitimate theatres. And we don't even accept all scripts from these groups of candidates.

Even with this highly selective process, we still suffer from a backlog of scripts each season (there are usually about 150-200 scripts to read in the office at any given time—there are 3 regular readers, including myself.) I apologize for any possible inconvenience this decision has caused you.

I appreciate your interest in Arena Stage, and I wish you the best with your playwriting. May I suggest that you target your inquiries to smaller theatres, and, most importantly, those that aggressively seek to produce new work.

Sincerely,

*Cathy Madison*

Cathy Madison
Literary Manager

[Attachment 4]

# DORRANCE
## PUBLISHING CO.
### INC.

643 Smithfield Street • Pittsburgh, PA 15222 • (412) 288-4543 • FAX (412) 288-1786

April 9, 1997

Mr David Whitehead
1101 Westfield Dr
Oxon Hill, MD 20745

Dear Mr Whitehead:

One of our researchers has come across the manuscript that you registered with the Library of Congress and has forwarded your name to me as a possible candidate for publication with our company.

As an author, you are probably aware of (and perhaps have experienced) some of the problems of trying to get your work published by a commercial publisher. Just having your manuscript read by most commercial publishers is difficult and usually involves long delays.

Dorrance Publishing Company, Inc. provides a practical alternative for consideration by authors of book length fiction and nonfiction manuscripts, collections of poetry, collections of short stories, and children's books who wish to see their works in print.

The Dorrance name has been associated with a tradition of quality subsidy publishing since 1920. I would welcome the opportunity to discuss our services and to review your manuscript to determine whether it meets our requirements for publication, and if so, if we can be of help.

Also, I will be happy to send you a complimentary copy of our brochure, *Author's Guide to Subsidy Publishing*. The brochure outlines our publishing programs, including the manner in which we mechanically edit, design, produce, and promote our books.

Please call me, toll-free, at (800) 605-7654 between 9:00 A.M. and 5:00 P.M. Eastern Standard Time, Monday through Friday.

I look forward to your call.

Sincerely,

Robin L. Jones
Author Relations Representative



**DORRANCE**
**PUBLISHING CO.**
══════ INC. ══════   643 Smithfield Street • Pittsburgh, PA 15222 • (412) 288-4543 • FAX (412) 288-1786

July 25, 1997

Mr. David L. Whitehill
1101 Westfield Dr.
Oxon Hill, MD 20745

Dear Mr. Whitehill:

It was a pleasure to speak with you today about the publication of your manuscript, "God vs. Satan: A Theoretical Analysis." I am sending the information about the possible payment plans which you may opt to choose.

As we discussed, we provide several options for our authors to help pay the subsidy fee. Usually, we require 40% of the fee upon signing of the contract, 40% of the fee upon the author's approval of the edited manuscript (about one to two months after the first payment) and 20% of the fee upon the author's approval of the page proofs (about two to three months after the second payment). The period between payments can be extended, but of course, this would increase the time the book is in production.

Another option would be to divide the subsidy in equal payments made over the course of production. In your case this would be 10 monthly payments of $1,180.

You may also pay the subisdy fee in equal monthly installments over a 15-month, 18-month or 24-month period. This option allows you to make the smallest down payment and to have the smallest monthly payment. With this plan, we begin work on your book when we receive your signed contract and a first payment. Your first payment can be any percentage of the total fee. However, the minimum first payment is $500. You then pay the balance of the fee over 15 months, 18 months or 24 months WITHOUT INTEREST.

In your case, your monthly payments will be as follows based on a first payment in one of the following amounts:

|  | NUMBER OF MONTHLY PAYMENTS | BOOK PRODUCED IN |
|---|---|---|
| First Payment of $3,540 (30%) | 14 monthly payments of $550.67 and one payment of $550.62 | 200 working days, as proposed |

|  |  |
|---|---|
| 17 monthly payments of $458.89 and one payment of $458.87 | 200 working days, as proposed |
| 23 monthly payments of $344.17 and one payment of $344.09 | 260 working days |

**First Payment of $2,360 (20%)**

|  |  |
|---|---|
| 14 monthly payments of $629.33 and one payment of $629.38 | 200 working days, as proposed |
| 17 monthly payments of $524.44 and one payment of $524.52 | 240 working days |
| 24 monthly payments of $393.33 and one payment of $393.41 | 300 working days |

**First Payment of $500**

|  |  |
|---|---|
| 15 monthly payments of $753.33 and one payment of $753.38 | 240 working days |
| 18 monthly payments of $627.78 and one payment of $627.74 | 260 working days |
| 24 monthly payments of $470.83 and one payment of $470.91 | 320 working days |

Enclosed is a copy of our Payment Option Flyer that discusses the options in more detail.

This proposal is based on publishing the book in our full subsidy program. We will mechanically edit your text, typeset and design the book pages, proofread the typeset text, write an About the Author and About the Book blurb for the cover of the book, create an original piece of art for the cover of the book, design the book cover, apply for a copyright in your name and print and bind the books.

When the books are produced we will warehouse the finished books and implement a promotion plan which, in general includes a publicity campaign (sending news releases and review copies, attempting to schedule radio and TV interviews, autograph signing parties, etc.) and the solicitation of book wholesalers, jobbers, and booksellers.

We will fulfill all book orders and be responsible for all shipping, invoicing, etc. After the first press run of books are depleted we will go back to reprint as many times as needed, at our expense, to fulfill orders during the term of the contract.

If you have any questions regarding this information or the contract contents, please contact me at (800)605-7654. I am glad to help you wherever I may.

Sincerely,

Robin L. Jones
Author Relations Representative

# MEMORANDUM

[Attachment 5]

**To: Attorney Paul Krause**

**From: Attorney Beth Ann Walker**

**RE: PROPOSED SETTLEMENT AGREEMENT**

Per our recent phone conversation regarding the latest developments on Mr.
Whitehead's cases in the D.C. District Court, I have attached the documents which
you requested to review which have been submitted to the House Government
Reform Committee and the House Judiciary Committee's Subcommittees on Courts
and Oversight. These evidentiary materials are **for your eyes only**. I will be glad to
come by the office and answer any questions you may have on the subject.

In addition, in answer to your question, Mr. Whitehead has no intention of ever
bringing suit against your law firm.

I have thoroughly researched the **access issue** on Mr. Whitehead's works and feel that
it stems from his involvement at the Howard University Theatre Group. In particular
to his tendering most of his original works to one of the directors there, Mr. Mike
Malone. You will recall, he was a close associate and mentor of Debbie Allen, the
actress who appeared in a Dreamworks production. Mr. Whitehead graduated from
Howard University and received his Masters' Degree from that institution. He
attended on a basketball scholarship. During his years at Howard University his
original works received recognition and some were even performed locally in D.C.

Mr. Whitehead remains a committed fan of Mr. Spielberg and is a great admirer of
his prestigious works. We do not think that he has been well served by his underlings
in this matter. We do not want to see his name tarnished regarding this issue. Mr.
Whitehead would welcome the chance to present some other original works to
DREAMWORKS once this lawsuit is resolved.

I would welcome the opportunity to discuss this matter further with you and your
associates. I hope to hear from you later this week.

Respectfully submitted,

B. W.
B. W.

# SETTLEMENT AGREEMENT

**THIS AGREEMENT** made by David L. Whitehead residing at 1101 Westfield Drive, Oxen Hill, Maryland 20745, herein called Mr. Whitehead represented by Counsel Beth Ann Walker, and "DreamWorks Inc." herein called DreamWorks represented by Counsel Paul Krause of Wilson, Elser, Moskowitz, Edelman, & Dicker.

# WITNESSETH:

Mr. Whitehead is the author of a novel entitled **"God vs. Satan"** which contains a section devoted to a musical about Moses herein called Mr. Whitehead's novel. Mr. Whitehead also authored a play entitled, **"Big Bad Wolf vs. Miss Little Red Riding Hood @ The Mike Tyson Story"** herein called the play. Mr. Whitehead wrote a poem entitled "In a **Box Controlled by House Negroes"** herein called the poem. All of his three works mentioned above were copyrighted.

Mr. Whitehead asserted his claim in Civil Action Whitehead v. DreamWorks,et al. U. S. District Court at Washington, D.C. 98 CV 2938 regarding the DreamWorks film, and video entitled **"Prince of Egypt"** which ironically is a musical version of the story of Moses strikingly similar to Mr. Whitehead's novel with particularity to the section on Moses. The strikingly similar aspects of the movie to Mr. Whitehead's novel are obvious to the viewer and are not covert at all. A simple viewing of the video in conjunction with Mr. Whitehead's original copyrighted script is quite persuasive. It would certainly be visible to a reasonable man. Several ministers in the D.C. area who are familiar with Mr. Whitehead's work have commented on the many similar scenes, including the original theme @ a musical rhythm and blues Moses; both begin with destruction and end with Islam; both works employ all the plagues; both include the dramatic use of the symbolism of the cutting of hair of Moses and the horse; both employ the transitional lighting @ black screen between key scenes; both use the circular "LaLa song and dance at the same juncture.

Mr. Whitehead has asserted claims, in Civil Action No. 98 CV1917 regarding the character Cinque in "Amistad" in several scenes infringing the copyright protections of Mr. Whitehead's play, and poem. DreamWorks have denied this to be the case. It is interesting to note that this action also sued Time Warner/HBO, as co-producer and for the short film **"The Making of Amistad".** The law firm of White and Case, where Judge Friedman was Executive Partner for almost two decades represented both Time Warner and HBO at the time of the suit.

Mr. Whitehead combined both of his cases in a California Case numbered 01-56011 at the Circuit level, and District Court Case No. 00-7065. This case is still pending in the Court of Appeals in California.

Desiring to adjust and settle the controversy by amicable means, the parties agree as follows:

Simultaneously herewith DREAMWORKS has paid to Mr. Whitehead the sum of $3.500,000. (three million five hundred thousand dollars) in full and final settlement and satisfaction of the controversies above referred to. Mr. Whitehead acknowledges receipt thereof.

In consideration of the aforesaid payment Mr. Whitehead hereby releases and forever discharges DREAMWORKS from any and all claims, demands, and obligations whatsoever which he had, now has or may hereafter have against them arising out of or in connection with the controversies above referred to. Without limiting the generality of the foregoing, DREAMWORKS shall have the unrestricted right, without any payment or further obligation to Mr. Whitehead to continue the airing of their movies on T.V. and the distribution of its video tapes for rental and sale of "**The PRINCE OF EGYPT**" and "**Amistad**" as they desire, and to sell, license, exploit or otherwise dispose of any rights therein, as fully and freely as if the claims of Mr. Whitehead had never been asserted. This settlement agreement has been entered into by DREAMWORKS for the sole purpose of disposing of the controversy and obviating litigation. It is not, and shall not be construed to be, an acknowledgement by them that their movies "**The Prince of Egypt**" or "**Amistad**" infringes Mr. Whitehead's play, novel or poem as cited above. Furthermore, Mr. Whitehead retains his copyright ownership of his three works. Accordingly, the parties undertake that this settlement shall be private and confidential and that no publicity shall be given to it in any form by any of them. Neither Mr. Whitehead nor DREAMWORKS shall issue any public statement regarding it, nor make any reference to it in any communication, verbal or written, addressed to publishers, booksellers, librarians, educators, or otherwise, and neither of them will cause, encourage or permit others to do so. This provision is the essence of the settlement; and in the event of its breach by Mr. Whitehead, DREAMWORKS shall have such further remedies as the law may allow. D.C. law shall govern in any dispute between the parties.

This agreement shall enure to the benefit of, and shall be binding on the legal representatives of Mr. Whitehead and DREAMWORKS, and the successors and assigns of DREAMWORKS.

This agreement represents the entire understanding of the parties.

IN WITNESS WHEREOF Mr. Whitehead has hereunto set his hands and DREAMWORKS have caused this agreement to be signed by their duly authorized officers or legal representatives and their corporate seals to be hereunto affixed this _____ of March, 2002.

David L. Whitehead

Beth Ann Walker, Esq.   D.C. Bar # 956730
Counsel for David L. Whitehead
600 Indiana Ave.  Suite 900
Washington, D.C. 20004
Phone (301)   254-5532  Cell/pager
        (202)   452-5532 Office

DREAMWORKS @ by authorized officer

PAUL KRAUSE, Esq.
Counsel for DREAMWORKS, INC.
Wilson, Elser, Moskowitz, Edelman and Dicker
1341 G St. N.W.
Washington, D.C.   20037
Phone (202) 626-7660

[ Attachment 6 ]

June 2, 2004

Honorable Robert Mueller
United States Federal Bureau of Investigations
Department of Justice
Washington, D.C. 20530

Re:  Request A Criminal Probe on the film and distribution of Mel Gibson's *"The Passion of Christ"*, which was allegedly based on the 1995-96 play *"GOD vs. SATAN"*

Dear Director Mueller:

This letter is to inform the FBI of the alleged criminal Infringement of my intellectual property entitled *GOD vs. SATAN* by Mel Gibson, Enzo Sisti, Ben FitzGerald, Bruce Davey, Stephen McEveety, Icon Production Inc, Icon Distribution Inc, Tyndale House Publishers Inc, Marquis Films, and New Market Films Inc.

The above individuals and entities violated US and FBI criminal code Title 17 – Copyrights, section 506. Criminal offenses (a) Criminal Infringement.-Any person who infringes a copyright willfully either – (1) for purposes of commercial advantage or private financial gain, or (2) by the reproduction or distribution, including by electronic means, …shall be punished as provided under section 2319 of title 18, United States Code…

I met with a law firm in Washington, DC, which stated that there was infringement.  I was accompanied by three lawyers, who heard that there was indeed infringement.  I plan to send the FBI evidence of the case.

In short, the above matter relates to the current investigation of United States District Court Judge Paul L. Friedman and others.  Therefore, there is sufficient evidence to connect these matters.  Mel Gibson starred in the alleged infringing film "Conspiracy Theory", which I filed before Judge Friedman.

Gibson's fraudulent representation to the World that this creation (film) was placed into plans ten years ago, and that God gave him a vision to create and produce the film "The Passion of Christ" is outrageous; noting that Debbie Allen and Mike Malone and other individuals and entities had my work God v. Satan, since 1996.

Debbie Allen co-produced "Amistad" film with Dreamworks Pictures. Dreamworks Pictures later created the animated film "Prince of Egypt" from the material.  Walt Disney's animated film "Hercules" is strikingly similar to the "Prince of Egypt".

It is unclear whether Viacom used the play God v. Satan for Noah Arc, led by Mission Impossible and Rosewood John Vaught?

My work God v. Satan was used by the Hollywood studios in other works.

Sir, if you have any questions, please feel free to have your organization contact me. Again, I will provide you and the Congress with the evidence of this criminal matter.

Thank you for any consideration regarding this matter.

Respectfully,

David Louis Whitehead
1717 K. St. N.W. Suite 600
Washington, D.C. 20036

Cc Judiciary Committees of the United States Congress

September 8, 2004

United States House of Representatives
Judiciary Committee
Congressional Black Caucus
Washington, DC  20001

AA
9/9/04

Re:  *More information on Judge Friedman, Passion of Christ and Prince of Egypt*

Dear Members of Congress:


This letter is to inform the Congress on the abuse of power involving US District Court
Judge Paul L. Friedman and others on my copyright cases, which were filed in the
District of Columbia and Maryland.

DreamWorks Pictures used my musical play *"God v. Satan"* to create and produce the
highly economic successful film *"Prince of Egypt"*.  The Congress of the United States
has information regarding this matter.

It appears that Mel Gibson also used the musical play *"God v. Satan" to create and
produce his highly economic successful film "Passion of Christ".    See attachment 1,
Comparisons between the two works, excerpts from God v. Satan.*

Judge Paul L. Friedman dismissed the case Whitehead v. DreamWorks Pictures and
Home Box Office and Debbie Allen, et al., 98cv1917.  Noting that Ms. Allen was in
contact with Mike Malone of Howard University.  Mr. Malone had access to the play
God v. Satan.  Ms. Allen co-produced DreamWorks *"Amistad" film.*

Home Box Office, a Time Warner Company  co-produced Amistad with Ms. Allen.

Time Warner's Chairman Dick Parson is on the Trustees Board with Ms. Allen.
Together, these individuals used my material for projects for DreamWorks.

The above individuals, along with H. Patrick Swygert blocked my Ph.D application at
Howard University to prevent me from being more credible on this matter.  Noting that I
graduated from Howard University with a Master's degree in Political Science.

Judge Friedman ruled on the case Whitehead v. DreamWorks Pictures 98cv1917, when
he was a General Partner with White & Case LLP and Wallpark LLC.  Wallpark LLC
involves Media/Communication II.  And White & Case represents Home Box Office and
Time Warner.

God v. Satan is a musical play which was written in 1995-96.  The play covers the entire
Bible.

The Hollywood Studios dissected "*God v. Satan*" musical play for several films:

  *\*DreamWorks used the Moses portion of the play.*

  \* *Mel Gibson used the Crucifixion portion of the play.*

  • *It appears that Viacom used the Noah's portion of the play for it's production with Mission Impossible actor John Voight.*

The play is massive. It depicts Satan throughout the bible. DreamWorks used the satanic characters in its musical Prince of Egypt. Mel Gibson used the satanic character throughout the crucifixion of Jesus. Gibson also used the four Gospels used in "God v. Satan". Gibson sensationalized the murder of Jesus as a Gimmick and disquise of copying "*God v. Satan*" and to make zillions of dollars.

Mr. Gibson basically agreed to the theft of my material, as long as he would be protected by the forces of evil. A University of Pennsylvania Professor told me that "Mel Gibson deserves to be sued" for what he did.

Most importantly, Certified Public Accountant Alexis M. Stowe submitted an affidavit, which states that Viacom grossed over 4 billion dollars on the Mission Impossible projects. Noting that the Mission Impossible projects were based on my CIA book "Brains, Sex, & Racism In the CIA And The Escape" and one page script "Escape from CIA". <u>See attachment 2, affidavit of Alexis M. Stowe.</u>

Adding the gross amount from Mission Impossible, along with the Passion of Christ and Prince of Egypt and Walt Disney's Hercules, the studios made billions of dollars from the theft of my material. I have not received one dime from the massive theft. I am waiting on the FBI to confirm the investigation of this matter: *Passion of Christ.*

Last, US District Court Judge Deborah Chasanow dismissed my case against Viacom for the infringement thief to create and produce "*Forrest Gump*". <u>*See attachment 3, affidavit of publisher Samuel Yette.*</u>

Judge Chasanow owns a house under the financing of First Union and Wachovia Banks. According to her financial statement Senate Confirmation hearings, there is a 15 year loan on the home. White & Case represents First Union and Wachovia Banks. In short, Judge Chasanow's dismissal on Forrest Gump involved the expiration of the statute of limitations. However, I learned about the infringement years later based on the investigation of Judge Friedman.

In short, I request a full hearing and investigation of the fraud upon the courts and abuse of power by Judges Friedman and Chasanow and others.

This is the largest Judicial RICO in American History, when one compares the money made from the theft of my intellectual properties.

Respectfully,

David Louis Whitehead
1717 K. St. NW Suite 600
Washington, D.C. 20036


Cc  Hon. Robert S. Mueller

[ Attachment 7 ]

# RENSE.COM

# Michael Moore Teams With Mel Gibson For Next Documentary

### By Michael Fleming
### 3-28-3

**NEW YORK** (Variety) - Michael Moore, who didn't endear himself to the Oscar audience last Sunday, will doubtless arouse further ire with his next documentary.

The project will depict the allegedly murky relationship between President Bush's father and the family of Osama bin Laden. And it will suggest that the bin Laden family was greatly enriched by that association.

Moore is making a deal with Mel Gibson's Icon Prods. to finance "Fahrenheit 911," a documentary that will trace why the U.S. has become a target for hatred and terrorism. It will also depict alleged dealings between two generations of the Bush and bin Laden clans that led to George W. Bush and Osama bin Laden becoming mortal enemies.

While the words "fevered auction" and "documentary" should never be used in the same sentence, they fit the post-Oscar bidding battle orchestrated by the Endeavor talent agency. Gibson and Bruce Davey's Icon won with a bid worth eight figures in upfront cash and potential backend profits.

The deal comes as Moore's Oscar-winning "Bowling for Columbine" moves toward the $40 million worldwide gross mark. The $3 million film is one of the most successful documentaries ever.

"The primary thrust of the new film is what has happened to the country since Sept. 11, and how the Bush administration used this tragic event to push its agenda," Moore said. "It certainly does deal with the Bush and bin Laden ties. It asks a number of questions that I don't have the answers to yet, but which I intend to find out."

Moore has put a year's worth of research into the film. He'll finish it in time to be submitted for Cannes, 2004, and released in time for the presidential election that fall.

The Bush-bin Laden tie, if only circumstantial, begins with a business relationship between the former president and Mohammed bin Laden, the Yemeni-born father of Osama who was a Saudi construction magnate. He died and left his future terrorist son about $300 million that has been used to finance global violence. The young bin Laden was among the freedom fighters propped up by the CIA as they battled the Soviets in Afghanistan when the elder Bush headed that agency. And bin Laden's Al Qaeda campaign began after Bush put U.S. troops in Saudi Arabia during the Gulf War. A decade later, bin Laden's Twin Tower attacks made the battle against terrorism the prime focus of George W.'s presidency.

"The senior Bush kept his ties with the bin Laden family up until two months after Sept. 11," Moore said. "The bin Ladens invested heavily in the Carlyle Group, which has its hands in a number of pies and is the 11th largest defense contractor even though it mostly buys failing defense companies and sells them for profits."

The mood in Hollywood was mixed over whether Moore would be ridden out of town after his anti-war speech. He admitted his passion was partly fueled from the research he's done on the new movie and said public and industry reaction was overwhelmingly positive.

"I'd always watched and felt a little odd seeing actors win an Oscar and go off on some tangent cause. I'd just been given a standing ovation and an Oscar for a movie that deals not only with American gun violence, but how Bush manipulates the public with fear and how we are violent to people around the world. I e .pressed exactly what was in the film and instead of being blacklisted, I've not only gotten a deal to fund 'Fahrenheit 911' but offers on the film after. Presales on ("Columbine's") video release ran ahead of 'Chicago' this week, and my book is returning to the top spot on the New York Times bestseller list. It's because the majority of Americans agree with me see the

economy in the toilet and didn't vote for George W. People are now realizing you can question your government while still caring about the soldiers. We are all still filled with rage over Sept. 11 and have every right to seek vengeance on the bad guy. But not any old bad guy."

Moore said he was mildly surprised by the speech reaction, since it was a carbon copy of what he said at the Spirit Awards the previous day: "I didn't write an Oscar speech because I never thought we'd win. The last documentary that was a box office success and won the Oscar was 'Woodstock,'" Moore said.

Disclaimer

Email This Article

# MainPage
http://www.rense.com

## This Site Served by TheHostPros