*Whitehead v. Twentieth Century Fox Film Corp., Inc.*
**CIVIL ACTION NO. 1:05-cv-01462-GK**

# DECLARATION OF
# JEANETTE MELENDEZ BEAD

# EXHIBIT 6
# (Part B)

the adverse ruling against Whitehead below was summarily affirmed on appeal.[115] Subsequently, within a three-month span in 1994 alone, Whitehead sustained a trifecta of litigatory losses. In April of that year a claim against William Greer (a Secret Service Agent), was also summarily disposed of at both the trial and appellate levels (without even oral argument), on the grounds that "the parties' positions are so clear as to warrant summary [affirmance]." [116] In September, whatever his claim was against Abraham J. Greenstein (and two other prominent real estate lawyers), it was dismissed below and was also the subject of "summary affirmance ... substantially for the reason stated in the district court in its [dismissal] order." [117] Finally, in December 1994, Whitehead – like so many others – ran into a stone wall when he filed suit against the IRS, a case in which, notably, he had apparently squandered his administrative remedies and then attempted to take an impermissible appeal directly to a U.S. Circuit Court. Like the instant suit, it was dismissed for lack of jurisdiction.[118] Similarly, in April 1996, after he had lost another summary dismissal, this one in a suit against the Washington *Post*, Whitehead was also unsuccessful in the appeal, which resulted in a summary affirmance "on the court's own motion." [119] Eight months later, in December 1996, he sued the D.C. Public School System, via Julius W. Becton, then its C.E.O. under the D.C. Control Board, on an unspecified claim which was

---

[115] Whitehead v. Jenifer, 1992 U.S. App. D.C. LEXIS 31354 (Oct. 14, 1992)(unpub.op.).

[116] Whitehead v. Greer, 1994 U.S. App. D.C. LEXIS 19426 (Apr. 19, 1994)(unpub. op.).

[117] Whitehead v. Greenstein, 1994 U.S. App. D.C. LEXIS 28143 (Sept. 26, 1994)(unpub. op.).

[118] Whitehead v. Commissioner of Internal Revenue, 1994 U.S. App. D.C. LEXIS 37232 (Ginsberg, Sentelle and Rogers, J.J.).

[119] Whitehead v. Washington Post, 1996 U.S. App. D.C. LEXIS 14226 (Williams, Randolph and Tatel).

deemed to be so "specious" by the local District Court that it was also dismissed *sua sponte* under Rule 12(b)(6) because it did not even make out a claim upon which any legal relief could be granted; Whitehead's inevitable motion for reconsideration was likewise denied. In due course, as usual, so too was his appeal, based on an inferential finding that "it is patently obvious [that] plaintiff could not prevail on the facts alleged."[120] Whitehead rounded out the 20th Century with a suit of some kind against the Washington Metro Transit Authority (WMATA), which was also dismissed, as was his unsuccessful appeal to the U.S. Supreme Court thereon.[121]

In 2001, new vistas suddenly arose on Whitehead's litigation horizon. At the height of the ongoing Microsoft anti-trust suit in U.S. District Court here, Whitehead, seeing the deepest of pockets,[122] determined that he should be permitted to intervene pursuant to Fed.R.Civ.P. 24, and sought leave to file an *amicus* brief in that complex matter.[123] By then the behemoth case had passed into the hands of Judge Colleen Kollar-Kotelly who determined that all parties in the litigation were already well-represented[124] and ruled that any submission by this complete stranger "would be unhelpful." After his intervention motion was denied, Whitehead not only moved for reconsideration but, when that was also denied, he filed for a writ of mandamus. In that submission, to suit *his* own

---

[120] <u>Whitehead v. Becton</u>, 1996 U.S. App. D.C. LEXIS 34422 at *2-*3 (Dec. 20, 1996(unpub. op.)(Ginsberg, Sentelle and Henderson, J.J.).

[121] *See* <u>Whitehead v. WMATA</u>, 531 U.S. 1027 (2000). There is no public record of the nature of the suit.

[122] Meanwhile, apparently, he had been forced into filing for personal bankruptcy in 1999. *See* <u>Wachovia Bank v. (David L.) Whitehead</u>, No. 99-03793 (U.S. Bankr. Ct. W.D. Va. 1999).

[123] *See* <u>United States v. Microsoft Corp.</u>, 231 F.Supp.2d 144, 148 (D.D.C. 2002).

[124] Noted in the published opinions were the appearances of no fewer than 29 counsel for at least 40 parties.

purposes, he (1) requested Judge Kollar-Kotelly be removed from the case and (2) sought to use that motion as a means to "bootstrap" his many previous complaints against her colleague, Judge Friedman, for the 17 Whitehead cases that he had dismissed in previous years.[125] Heard before another Judge, the patently absurd motion was summarily denied, the Court ruling that "there is absolutely no support for his charge[s]," finding further that "it has no merit whatsoever." [126]

Yet, as the 21st Century dawned, Whitehead continued to file new suits and pursue old ones indiscriminately. Suing people and business was as easy for him as lifting names out of the Yellow Pages, *Standard & Poore's*, or the Federal Register.[127] Nevertheless, after more than a decade of litigation, as far as this

---

[125] <u>United States v. Microsoft Corp.</u>, 2002 D.D.C. 25507 (Dec. 19, 2002)(Kessler, J.) at *7-*8.

[126] *Id.*

[127] The following categories show those ferreted out *in addition to* people and entities hereinbefore cited:

**Publishers:** Prentice Hall. Corp. in <u>Whitehead v. Warner Bros.</u>, 2000 U.S. App. D.C. LEXIS 11645 (Apr. 5, 2000); <u>Whitehead v. Columbia Pictures, Inc.</u>, 2001 U.S. App. D.C. LEXIS 2173 (Jan. 19, 2001); and <u>Whitehead v. Columbia Pictures, Inc.</u>, 2001 U.S. App. D.C. LEXIS 1700 (Apr. 25, 2001) and Free State Reporting, Inc. in <u>Whitehead v. Reno</u>, 1996 U.S. App. D.C. LEXIS 24132 (Aug. 16, 1996); <u>Whitehead v. Reno</u>, 1996 U.S. App. D.C. LEXIS 34411 (Dec. 27, 1996); and <u>Whitehead v. Reno</u>, 1996 U.S. App. D.C. LEXIS 34424 (Dec. 27, 1996).

**Organizations:** Coalition on Political Assassinations in <u>Whitehead v. Carroll & Graf</u>, 2000 U.S. App. D.C. LEXIS 17992 (June 19, 2001).

**Movies/Broadcasting.** Steven Speilburg; Debbie Allen; Colin Wilson; Walter Parkes; Laurie Macdonald; David Franzoni; Steven Zaillian; Puffin Books of Penguin Group, Inc. Joyce Annette Barnes; Penguin Putnam, Inc.; Home Box Office; Time-Life, Inc.; Black Entertainment Television, Robert Johnson, President; John Lewis; Rick Porterfield in <u>Whitehead v. Dreamworks Pictures, LLC</u>, 1993 N.D. Ill. LEXIS 15321 (Oct. 29, 1993); <u>Whitehead v. Dreamworks Pictures, LLC</u>, 163 F.3d 600 (4th Cir. 1998); and <u>Whitehead v. Dreamworks Pictures, LLC</u>, 1998 4th Cir. LEXIS 22319 (Aug. 27, 1998).

**Govt. Officials.** Eleanor Holmes Norton in <u>Whitehead v. Gates</u>, 1993 U.S. App. D.C. LEXIS 38200 (July 27, 1993); <u>Whitehead v. Woolsey</u>, 48 F.3d 1218 (4th Cir. 1995); <u>Whitehead v. Woolsey</u>, 51 F.3d 270 (4th Cir. 1995); <u>Whitehead v. Woolsey</u>, 51 F.3d 270 (4th Cir. 1995); and <u>Whitehead v. Tented</u>, 2001 U.S. App. D.C. LEXIS 6634 (Mar. 16, 2001); Louis Freeh, Dir. of the FBI in <u>Whitehead v. Woolsey</u>, 48 F.3d 1219 (4th Cir. 1995);

Court can tell, the "box scores" per generic categories are as follows:

| | |
|---|---|
| CIA: 23 | Whitehead: 0 |
| U.S. Govt./Officials: 15 | Whitehead: 0 |
| Movie Companies: 8 | Whitehead: 0 |
| Publishers: 8 | Whitehead: 0 |
| Bradley Univ.: 8 | Whitehead: 0 |
| Microsoft: 3 | Whitehead: 0 |
| Songwriters: 2 | Whitehead: 0 |
| IRS: 2 | Whitehead: 0 |
| D.C. Schools: 1 | Whitehead: 0 |
| WMATA: 1 | Whitehead: 0 [128] |

The Court will say this for Mr. Whitehead:  Whatever the CIA may have

---

Drew S. Days, III, U.S. Solicitor General, in Whitehead v. Reno, 1996 U.S. App. D.C. LEXIS 24132 (Aug. 16, 1996); Lynn Martin, Dir. Dept. of the Labor and Delores L. Rozzi, Dir. of the EEOC in Whitehead v. Woolsey, 1995 4th Cir. LEXIS 6395 (Mar. 15, 1995) and Whitehead v. Deutch, 67 F.3d 298 (D.C. Cir. 1995); Joe Borger, Richard Luchs, and Gilbert Delorme of the IRS in Whitehead v. Commissioner, 1994 U.S. App. D.C. LEXIS 37232 (Dec. 14, 1994); and Lloyd E. Benson, Sec. of Treasury in Whitehead v. Greer, 1994 U.S. App. D.C. LEXIS 19426 (Apr. 19, 1994).

**Mixed.** One of Whitehead's suits is his "personal worst," in which he sued Evan J. Kemp, Chairman of the EEOC;  Benjamin A. Streeter;  Anthony M. Frank, the Postmaster General; Nicholas Katzenbach; Stephanie Colbert; Robert Hayden, III; Richard Kerr;  Fran Snyder; George Farmer; Ted Clark; Barbara Cooper; Diane Yancey; Eileen Turmelle; Wiz Records, Lew Rosenfeld, V.P.; Radio Shack; and First American Bank, N.A. in Whitehead v. Woolsey, 1995 4th Cir. LEXIS 6395 (Mar. 15, 1995)and Whitehead v. Woolsey, 51 F.2d 270 (4th Cir. 1995). In this single case Whitehead named a total of 22 defendants – almost three times the number victims in the St. Valentine's Day Massacre in 1929, and like them, it was shot down too.  The difference is that the lawsuit had it coming.

**Misc.** And, when he ran out of names, Whitehead filed suit against "[John] Does 1-50" in Whitehead v. Viacom, Inc., 2003 4th Cir. LEXIS 92821 (Apr. 30, 2003) at 725 n.13.

[128] Whitehead is in danger of breaking the long-standing record of Chicago Cubs/Milwaukee Braves pitcher Bob Buhl (1928-2001) in the 1962 season, when he went 0 for 70 at bats – still the record "hitless streak" for the major leagues. See "Baseball Library" at <http://www.baseballlibrary.com/baseballlibrary/ballplayers/B/Buhl_Bob.stm>. Even so, with a lifetime batting average of only .089, Buhl still had a better average than Whitehead.  With this monumental public record attesting to his capacity for failure, at a minimum, in terms of demonstrated talent, instead of vindicating himself as the Orson Welles of screenplays, Whitehead has proven to be the Ed Wood of litigation.

found to be his putative shortcomings, no one can question his persistence. Like Capt. Fumio Nakamira, late of the Japanese Imperial Army,[129] he is apparently in this war for the duration – and beyond.[130] But mindless pursuit of baseless claims is no virtue in the world of courts. It is wrong-headed, nuisance litigants like Mr. Whitehead who give trial judges – well, white heads -- aging them well before their time because they must address spurious lawsuits and motions like those continuously filed by him.[131] This waste of already scarce and overburdened judicial resources,[132] that are thus siphoned off from the needs of *deserving* litigants, is unconscionable. And this is to say nothing of the grossly unfortunate cost to innocent *parties* themselves (even if they *are* major corporations and movie producers), who must expend thousands, perhaps hundreds of thousands, of dollars to fight these misbegotten claims – all with no hope of actually *winning* anything, even peace.[133]

---

[129] The last known Japanese soldier to surrender in the Pacific, in April 1980, over 16 years after the most publicized surrender, that of Lt. Hiroo Onada in 1974, and 35 years after the formal Japanese surrender ending World War II. *See* "Chronology of Japanese Holdouts in the Pacific" at <http://www.wanplea.com/holdouts/list.html>.

[130] Moreover, as seen above, he does not suffer from any shortage of ego. Regrettably in that regard, however, he has misperceived, and in the worst ways possible, the lesson behind Robert Browning's (1812-89) "Andrea del Sarto" (1855) that "A man's reach should exceed his grasp." By contrast, there is much to be said for man who has no talent, but remains modest about it.

[131] Poor Judge Friedman alone has written several hundred pages in opinions, all of which go off on the premise that there was never a single even colorable claim in any of Whitehead's lawsuits or motions.

[132] And let it be clear, by this phrase this Court just not just mean "judges." The term "judicial resources" also included put-upon civil clerks, administrators, law clerks, judicial administrative assistants, other personnel, and the multitude of people whose efforts make courts operate effectively, and without whom judges could not hope to do their jobs properly. These people, too, are needlessly burdened by nagging, vexatious, and bad-faith litigators like this one.

[133] As Judge Friedman found, Whitehead had repeatedly squandered indulgences, thrown opportunities in the face of judges and litigants, and proceeded in the most venal

Make no mistake about it, though. Whitehead is not just some deluded miscreant, stumbling through court after court, vainly searching for justice on even the most basic level. Rather, he has, with Hezbollah-like determination, taken up a general assault on people and institutions in the venal hope for a "payday" after successive wars of attrition. Judge Friedman realized this after the "litigation riot" that Whitehead had visited upon his court, commenting more than once on the fact that Whitehead had never even bothered to deny such allegations. "Lest it be inferred from such a dismal track record that Mr. Whitehead is but an unsophisticated naif tilting at windmills, one need only look at his own stated intent for bringing many of these cases ....," Judge Friedman concluded.[134] His Honor then quoted from affidavits of highly respected lawyers and responsible business executives, to whom Whitehead, had openly admitted that

> "he had filed yet another copyright infringement case ... adding numerous additional movies and songs to his list of allegedly infringing works .... Mr. Whitehead also stated that he would stop suing defendants and other studios if defendants would simply pay him money to go away. Mr. Whitehead again made clear that he intends to continue inundating the defendants and this Court with copyright infringement actions in the hopes of extracting a nuisance settlement." [135]

---

manner in his cases there. "Plaintiff ignored those warnings, inundating the Court with paper and requiring a substantial amount of work on the part of defendant's lawyers. The Court could not have been clearer in communicating to plaintiff that if his claims in this case and others were as frivolous as those previously dismissed, the Court would not hesitate to award attorneys' fees and costs in the future." Whitehead v. Columbia Pictures, 2000 D.D.C. LEXIS 22188 at *41.

[134] Whitehead v. Paramount Pictures, 145 F.Supp.2d at 5.

[135] Declaration of Jeffrey W. Kilduff, Esq., of O'Melvey & Myers, attached to Motion for Protective Order, Nov. 19, 1996, Whitehead v. Paramount Pictures Corp., Civil Action No. 96-2436 (D.D.C.), cited and quoted in Whitehead v. Paramount Pictures, 145 F.Supp.2d at 5 n.1; see also the same quotations and citations in Whitehead v. Tenant, 2000 U.S. LEXIS 14975 at * n.1 and Whitehead v. Columbia Pictures, 2000 U.S. LEXIS

-34-

Moreover, Whitehead had "repeatedly explained that he would continue with his barrage of motions so that Defendants would have to incur substantial legal fees in order to respond. He has admitted that his strategy is to make litigating this case so expensive to Defendants that they will pay plaintiff to go away." [136] It is evident to this Court that Whitehead is either, at best, a dealer in "litigation futures" or, at worst, a "litigious extortionist." Neither approach should be tolerated under the Rules of Civil Procedure.

## II. **THE MILL**

In the instant case, having deliberately poured the aforementioned grist on the dock of the Small Claims Court mill, with every reason to know it is too big for our wheel, Whitehead – in another obvious ploy to make already groundless litigation as complex, troublesome and expensive as possible for his latest target – sought the "worst of both worlds" by insisting that he would not "consent" to any proceedings before a Magistrate Judge in the Branch of the Court in which he had chosen to file his suit and demanded that it be certified for all purposes to the Civil Division before an Associate Judge.  Seeing this by now familiar tactic, the Defendant nevertheless asked for a ruling on its motion to dismiss for obvious absence of subject matter jurisdiction over a Federal Copyright in **any** Branch or Division of a State-level court.

### A. **Consent to a Magistrate Judge**

The "consent provision" in the jurisdictional statute for D.C. Superior Court Magistrate Judges reads as follows:

> Subject to the rules of the Superior Court and with the consent of the parties involved, [a Magistrate Judge may] make findings and enter

---

22188 at *11. In **this** particular <u>Columbia</u> suit (there were, as noted above, four others), Whitehead's *ad damnum* was $2 **billion**. *Id.* at *18. Even so, this Court would be surprised if the recovery would have been any more than **$1** billion – give or take a fewscore million.

[136] *Id.*

> *final* orders or judgments in other uncontested or contested proceedings, in the Civil, Criminal, and Family Divisions of the Superior Court, excluding jury trials and trials of felony cases.

D.C. Code § 11-1732 (j)(5)(emphasis added). As this Court has had occasion to discuss previously, the connection between the "consent requirement" and the phrase "final orders or judgments" is plain; no requirement exists for consent to purely *procedural* or "non-final" orders – only to "final orders."[137]

The fact that there *is* a stricter interpretation regarding the functions of Magistrate Judges in U.S. District Court is not necessarily governing and such a analogy between them and D.C. Superior Court Magistrate Judges is not a direct one.[138] Although both jurisdictional statutes contain a "consent provision," little else is comparable, including these Judges' respective civil case loads.[139]

---

[137] *See generally* In re Four Misdemeanor Cases, 128 D.W.L.R. 841 & 857 (Apr. 17-18, 2000); *see also* In the Matter of D.T., 129 D.W.L.R. 45 & 53 (Jan. 8-9, 2001)(reviewability of final orders by Magistrate Judges). Nor does the initial phrase of this statute ("Subject to the rules of the Superior Court") change anything because the pertinent rule on the jurisdiction of Magistrate Judges in all civil cases simply repeats the text of the statute itself. See Civil Rule 73.

[138] *See* Caprera v. Jacobs, 790 F.2d 442, 444-45 (5th Cir. 1986)(Consent to a Magistrate Judge's ruling on any contested motion is explicitly required pursuant to a strict interpretation of 28 U.S.C. § 636(c) in order to protect the Constitutional right to have a federal claim heard by an Art. III District Court Judge and a waiver of such consent will not be assumed or inferred.).

[139] The jurisdictional statute for U.S. Magistrate Judges effectively requires that the parties consent before a Magistrate Judge may make rulings or judgments in "any or all" proceedings in a civil matter, whether they result in a final judgment or not. 28 U.S.C. § 636(c)(1). Similarly, subsection (c)(2) thereof not only necessitates consent of the parties in order for a Magistrate Judge to exercise *any* "civil jurisdiction" over a case, but it also goes out of its way to ensure that the granting or withholding of any such consent must be voluntary and without any adverse consequences. Thus, ironically, the civil jurisdiction of U.S. Magistrate Judges in Article III courts is much more narrowly tailored than it is for D.C. Magistrate Judges in our Article I court. Put another way, surprisingly D.C. Superior Magistrate Judges actually have *more* authority over civil cases than do their counterparts in U.S. District Courts.

The Small Claims Branch is a "court of limited jurisdiction"[140] – but one that must handle approximately 18,000 cases a year in one way or another.[141] Against this backdrop, if it were a requirement that no case could be processed *at all* under the aegis of a Magistrate Judge unless the parties "consented," little could be effectively accomplished here. It would, in fact, mean that no case could be subject to a simple default, *ex parte* proof, or a default judgment (much less to vacate same), no ruling could be made on the validity of service of process, no subpoena could be issued, no case continued or re-scheduled, that every motion to reconsider would be mooted out, that no case could be dismissed for want of prosecution, for lack of personal or subject matter jurisdiction, or for any one or more of numerous "non-final order" methods by which every court must effectively control its own docket – all because one of the parties was either not present to "consent" or arbitrarily withheld it on such "mechanical" matters. Perforce, the "consent requirement" applies only to "final orders and judgments."[142]

It is well-established that a Rule 12(b)(1) or (2) dismissal for want of subject matter or personal jurisdiction does not constitute a "final order" – either for purposes of appeal or, this Court would hold, for purposes of "consent" to

---

[140] *See* McCray v. McGee, 504 A.2d 1126, 1130 (D.C. 1986)(holding that the Small Claims Branch to be "a statutory court of limited jurisdiction").

[141] In 2003 (the last year for which complete statistics are available), the Small Claims Branch processed 17,916 new filings and 18,493 case dispositions. Joint Committee on Judicial Administration, 2003 ANNUAL REPORT: DISTRICT OF COLUMBIA COURTS at p. 72 & 83.

[142] Ironically, a literal application of that concept would preclude a Magistrate Judge's even certifying the case over to an Associate Judge, if one of the parties did not "consent." This would require that the moving party actually file a what amounts to a "mandamus" to an Associate Judge to "call up" a case over the opposition of the other party who is withholding consent – thus needlessly troubling all concerned, no matter what the other rules of court may say. A well-settled legal concept is that the law does not require anyone – even a Small Claims Judge – to do a useless thing. *See* In re Ramos, 860 A.2d 843, 845 n.2 (D.C. 2004)("*Lex non praecipit inutilia, quia inutilis labor stultus.*")("The law commands not useless things, because useless labor is foolish.").

-37-

Magistrate Judge jurisdiction.[143]  *See generally* <u>Ashton Gen. Partnership, Inc. v.</u>
<u>Federal Data Corp.</u>, 682 A.2d 629, 632 n.2 (D.C. 1996)("'[A] dismissal under [R.
12](b)(1) is not on the merits and thus is not given *res judicata* effect.")(*quoting* 2A
J. Moore, MOORE'S FEDERAL PRACTICE ¶ 12.7 [2-1](2d ed. 1995), at 12-49)(bracketed
terms in original)); *see also* <u>Timus v. D.C. Dept. of Human Rights</u>, 633 A.2d 751,
757 (D.C. 1993)(same principle for determination of appellate jurisdiction).[144]

  The self-fulfilling irony in such an instance is that "a court always has
jurisdiction to determine its own jurisdiction." [145] This also is necessary, even on
a "consent docket," because otherwise the arbitrary withholding of consent could
"tie up" scores of cases on a court's docket and seriously inhibit, if not entirely
collapse, that court's ability to perform its duty.  This is especially compelling for
moving calendars consisting of pre-trial and other procedural matters that do not
result in final orders.[146]  On such a calendar, the presiding judicial officer must

---

 [143]  Although, by contrast, a dismissal under Rule 12(b)*(6)* for failure to state a
cause of action upon which relief could be granted *is* considered a final (and appealable)
order which would have required an antecedent consent if called before a Magistrate
Judge. *See* <u>Caprera v. Jacobs</u>, 790 F.2d at 444, *ante*. Note, however, that because
Whitehead has rendered this point moot by re-filing his (baseless) claim in the general
Civil Division, it is not necessary to make that formal ruling in this Memorandum
Opinion.

 [144]  This concept is buttressed by the very "Rule on Dismissals" that explicitly
provides that "[u]nless the Court in its order for dismissal otherwise specifies, a dismissal
under this subdivision and any dismissal not provided for in this Rule, ***other than a***
***dismissal for lack of jurisdiction***, or for failure to join a party under Rule 19, operates
as an adjudication upon the merits." Super.Ct.R.Civ.P. 41(b)(emphasis added); *see also*
<u>Bazata v. Nat'l. Ins. Co. of Washington</u>, 400 A.2d 313, 315 (D.C. 1979)(discussing the
"jurisdictional exception" to Rule 41(b)).

 [145]  *See generally* <u>Stevens v. Arco Mgmt.</u>, 751 A.2d 995, 1001 (D.C. 2000)(*quoting*
<u>United States v. Mine Workers</u>, 330 U.S. 258, 290 (1947)).

 [146]  *Cf.* <u>St. Joseph's Hospital & Med. Ctr. v. Muirfield Const. Co.</u>, 829 A.2d 652,
657 (N.J. Super. 2003)(making the distinction under the local rule between "pretrial
matters" to be referred to local Magistrate Judges and an "action to be tried" to final
judgment, suggesting that the former does not require consent, but the latter does)

-38-

have considerable discretion, at least initially, in disposing cases as facially plain as this one. The Magistrate Judge presiding in this assignment would not need to trouble an Associate Judge in the face of a lawsuit in dismissing from this Branch of the Court a claim that, for example, prayed for the fixing of land boundaries because the jurisdictional statute here expressly excludes "cases involving real property,"[147] or for the issuance of a mandatory injunction" because this Branch of the Court does not have that general power,[148] or for a dispute between foreign ambassadors posted here because that exclusive jurisdiction begins and ends at a much higher level.[149] As seen in the next subsection,[150] the jurisdiction over all claims "arising under" copyrights is just as plain – and it, too, lies elsewhere.[151] Such a decision is all the more impelling when a ruling must be made on a filing by someone who is a notorious abuser of the judicial process, whose stated goal is to make litigation as vexatious and expensive as possible for

---

[147] See D.C. Code § 11-1321 ("An action which affects an interest in real property may not be brought in the Branch.").

[148] See Voytsekhovska v. Albert, 126 D.W.L.R. 849, 857 & 869 (May 5-7, 1998)(Goodbread, C.)(To the extent that it has any at all, the Small Claims Branch has only very limited "equitable jurisdiction.").

[149] See Art. III, 2 cl. 2 ("In all Cases affecting Ambassadors, other public Ministers and Consuls, and those in which a State shall be a Party, the Supreme Court shall have original Jurisdiction.").

[150] See Subsection B, post, on "Federal Copyright Jurisdiction."

[151] To be sure, the Court realizes that this is not a "hard and fast" rule – so few are in the Small Claims Branch, after all. Some pre-trial jurisdictional motions give rise to arcane and complex issues on which reasonable people and judges may disagree. Even when a trial judge's jurisdictional ruling is dazzlingly brilliant, it might end up "differing" from that of the Court of Appeals and may thereupon be reversed. See, e.g., Etchebarne-Bourdin v. Radice, 124 D.W.L.R. 2253 (Nov. 18, 1996)(Kramer, J.), rev'd and remanded in Etchebarne-Bourdin v. Radice, 754 A.2d 322 (D.C. 2000)(In order to exercise long-arm in personam jurisdiction, a claim – here for medical malpractice – must only be related to, or substantially connected with, the defendant's conduct in the form jurisdiction.). This Court would not necessarily cleave to this rule in such a case – but this is not it.

his opponents; there is no need for a court to elevate form over substance and blindly play into his hands, to the detriment of all concerned – including the Associate Judge at issue.

The Court is also well aware, of course, that there is a distinction to be made between the "non-finality" of a dismissal for lack of jurisdiction and the "appealability"of such an order; this Court does not doubt that its dismissal can be reviewed, on proper and timely application, pursuant to the usual channels.[152] The issue is whether it was empowered to make such a ruling without the Plaintiff's consent in the first place. His rights to review and appeal remain fully in place; his history shows that he is not timid about vindicating what he perceives are his rights. The Court is confident, however, that even his re-filing of a Federal Copyright claim in the general Civil Division does not change its original ruling: the filing, whether here or there, is and always has been, a nullity because **no** Division or Branch of the D.C. Superior Court may hear it under a federal statute that reserves "original and exclusive jurisdiction" to an Article III trial court. But, as shown below, there is a much larger principle at stake here and the Court will not tarry any further over the "consent issue," which is unnecessary to decide here.

## B.  Federal Copyright Jurisdiction

Whitehead well knows better than this, based on his own extensive experience in similar matters that he has foisted upon unsuspecting courts in the past. With one conspicuous, notable, and in this context, highly telling exception,

---

[152] Note, however, that the Court of Appeals continues to adhere to the well-settled premise that, because Magistrate Judges are judicial officers with independent jurisdictional grant of authority, see Canada v. Management Partnership, Inc., 618 A.2d at 717-18 & n.4 (the jurisdiction of these judicial officers is rooted in "a direct statutory grant of jurisdiction" which is implemented by, but not dependent solely on, promulgation of court rule), the standard of review pursuant to D.C. Code § 11-1732(k), is "the same standard as would be applied by the Court of Appeals" to such an order issued by an Associate Judge of the Superior Court. American Service Center Assocs. v. Helton, 2005 D.C. App. LEXIS 20  *6 n.2 (May 4, 2004).

every copyright infringement case he has *ever* filed has been in a U.S. District Court. That exception was his 2000 copyright infringement suit against Columbia Pictures, which he had originally filed *in* D.C. Superior Court. The Defendant, however, immediately removed it to the U.S. District Court here, pursuant to 28 U.S.C. § 1441(a) & (b).[153] Thus, Whitehead has known for at least the five years since one of his early "Columbia copyright cases" that such a case could not be engrafted onto a State-level court, because it could never survive a "removal action." Yet here he is again – a half a decade of hard-learned litigation lessons gone completely unavailing – this time at the Small Claims level, yet.[154]

Moreover, Whitehead also knows that nothing has changed – or could change – as to established statutory and case law on the subject which has been in effect since at least 1906. As the Defendants herein point out through Counsel,[155] this is in fact what the applicable federal jurisdictional statute requires via a provision that vests "original and exclusive" jurisdiction over such claims in Article III courts:

> The district courts shall have ***original jurisdiction*** of any civil action arising under any Act of Congress relating to patents, ... copyrights and trademarks. Such jurisdiction shall be ***exclusive of the courts of the states*** in patent ... and copyright cases.

28 U.S. § 1338 (emphasis added).[156] There is no "air" in this statute and Federal

---

[153] *See* <u>Whitehead v. Columbia Pictures</u>, 2000 D.D.C. LEXIS 22188 at *3.

[154] Defendant avers that if the dismissal overturned, a removal motion will follow. Defendant's Opposition at pp. 7-8.

[155] Defendant's Opposition at pp. 3-6.

[156] This original and exclusive jurisdiction is predicated on the U.S. Constitutional provision that vests in Congress and the Federal Government the exclusive power "[t]o promote the progress of science and useful arts, by securing for limited times to authors and inventors the exclusive right to their respective writings and discoveries." Art. I, § 8, cl. 8, pursuant to which the actual Federal Copyright Law was enacted and codified at 17 U.S.C. § 101 *et seq.* and 18 U.S.C. § 2319.

Courts have uniformly interpreted the statute to mean exactly what it says. *See,*
*e.g.,* NBC, Inc. v. Copyright Royalty Tribunal, 270 U.S. App. D.C. 257, 848 F.2d
1289 (1988)("[T]he federal [Article III] courts ... have exclusive jurisdiction" over
copyright infringement actions.) as have other State courts in which the issue has
arisen. *See, e.g.,* Maxey v. R.L. Bryan, Co., 368 S.E.2d 466, 467 (S.C. Ct. App.
1988)(quoting statute in ordering dismissal of claim).[157]

It was only after Whitehead was "shown the door" as a matter of nasty
public record in two of them that he has found himself with no forum left to him
except to be reduced to – think of it! – Small Claims Court. Here, in a desperate
and frantic search for *some* legal "victory" *somewhere*, he seeks some sort of in
ironic vindication of what he insists is a "multi-million dollar" claim.[158] Regardless
of the amount at issue, such a tactic is foredoomed to failure. A LEXIS search for
the terms "small claims" and "copyright," appearing in a dispositive context within
the same case, yields only one – a case that seals Whitehead's fate here, if there
was ever any doubt. In Schrut v. News America Pub., Inc., 474 N.Y.S.2d 90 (Civ.
Ct., City of N.Y. 1984), a plaintiff filed a Small Claims case in that State court
alleging violation of a federal copyright on a photograph.[159] The corpus of the

---

[157] By comparison and contrast, there are certain federal statutes that require just
the reverse, *i.e.,* that the federally-created remedy be exercised in State-level courts. One
such example is the right created under the Telephone Consumer Protection Act (47
U.S.C. 227), shielding people from unsolicited telephone calls and faxes. Because the
statute presumes that claims for such damages are individually likely to be small, it vests
"exclusive jurisdiction" over such claims in State courts, and most likely in Small Claims
Courts, where available. See Murphy v. Lanier, 204 F.3d 911, 915 (9th Cir. 2000)(noting
accord with 2nd, 3rd, 4th, 5th & 11th Circuits to same effect).

[158] Presumably something less than $2 billion dollars, though, *see* n.135, *ante,*
in a court that has a statutory jurisdictional maximum limit of $5,000 – a mere bagatelle,
by comparison. *See* D.C. Code § 11-1321.

[159] For these purposes, of course, the District of Columbia is considered a "State"
and the Superior Court a "state court." *Cf.* McKenzie v. D.C. Dept. of Human Servs., 802
A.2d 356, 358 n.3 (D.C. 2002)(D.C. considered a State for various federal statutes and
programs, including Medicaid). The holding that *all* claims stemming from a copyright

Court's opinion is precisely on point here and is reproduced in its entirety as follows:

> [As the U.S. Eighth Circuit Court of Appeals held in 1906,] "A suit, the primary and controlling purpose of which is to enforce a right secured by the copyright law which is being infringed by the defendants, is a suit under ... laws ... within the jurisdiction of the Federal ... Courts ...."
>
> ***All cases found to "arise under" the Federal statutes relating to copyrights, therefore, fall within the exclusive original jurisdiction of the Federal District Courts.*** (U.S. Code tit. 28, § 1338). Although the claimant [also] instituted what appears to be an action for breach of contract within the monetary and overall subject matter jurisdiction of the Small Claims Court, the Federal copyright statutes have ***expressly preempted*** claims seeking relief under the common law or statutes of ***any State*** which, in essence, seek relief for copyright infringement. (U.S. Code, tit. 17, § 301).
>
> Accordingly, this small claims action is dismissed with leave to re-plead in the ***proper*** forum, the ***Federal*** court.

*Id.* at 905 (*quoting* <u>Wooster v. Crane & Co.</u>, 147 F. 515, 516 (8th Cir. 1906)(emphasis added)(case citations omitted).[160] Confronted with a precedent of a century's standing, Mr. Whitehead is not likely to reverse it in a D.C. Superior Court Small Claims case.

---

infringement suit are also to be settled in that suit, even if also based on ordinary state law, subsumes what might also be deemed Whitehead's "pendent claims" in the instant case, likewise confining them to a federal court thereunder. *See* Defendant's Opposition at p. 5-6 (discussing "federal preemption"). Consequently, those claims will not be discussed further herein.

[160] *See also* <u>The Traditional Cat Ass'n, Inc. v. Gilbreath</u>, 13 Cal. Rptr.3d 353, 396 (Cal. App. 2004)(copyright claim dismissed in state court action ) and <u>Favia v. Bronx Council of the Arts</u>, 1995 S.D.N.Y. LEXIS 8171 at *4 (Jun. 14, 1995)(noting that same case previously filed in N.Y.C. Small Claims Court had been "discontinued [dismissed] without prejudice on the ground that it lacked subject matter jurisdiction."). The Defendant makes the same point in his Opposition at pp. 5-6.

## C. <u>Refuge in the Resort to Recusal</u> [161]

As adverted to above, when all else failed him, Whitehead turned his ire against the Judges themselves, filing motions for recusal and lodging complaints against those who ruled against him. He has been almost as freewheeling and unrepentant in making groundless accusations against judges as he has been in suing innocent people and businesses.[162] This Court has found over a dozen cases wherein Whitehead had ultimately resorted to this tactic when things were not going his way.[163] Of course, *all* Whitehead's recusal motions have been summarily denied.[164] There is no reason to doubt that all these motions were unsuccessful

---

[161]  Where this case is concerned in this regard, the Court is reminded of the similar observation by Dr. Samuel Johnson (1709-1784) that, "Patriotism is the last refuge of a scoundrel."

[162]  He has also filed such a motion in this case as to the undersigned. He followed that motion by writing directly to the Chief Judge of the Superior Court, complaining about this Court's handling of his case. As noted below, the undersigned finds himself in prestigious company, including that of former Chief Judge Norma Holloway Johnson, against him Whitehead also lodged a formal complaint (to the Judicial Council of the District of Columbia), a complaint that, like *all* of his actual lawsuits, was summarily dismissed. *See* <u>United States v. Microsoft</u>, 2002 D.D.C. LEXIS 25507 at *7-*8. No word yet from Chief Judge Rufus G. King of our Court, though.

[163]  If the past is any prologue to Whitehead's *modus operandi*, the Associate Judge to whom Mr. Whitehead's civil action has been assigned can, fully expect to receive such motion sooner or later.

[164]  *See, e.g.*, <u>In re David L. Whitehead</u>, 1999 4th Cir. LEXIS 8438 (May 4, 1999)(Williams, Traxler and King, J.J.)(petition for writ of mandamus to transfer and reverse the ruling of a U.S. Magistrate Judge on the allegation that s/he was "biased," summarily denied without oral argument); <u>Whitehead v. Dreamworks LLC</u>, D.D.C. 22671 (Sept. 3, 1999)(Friedman, J.) *denial affm'd in same case* at 2001 U.S. App. D.C. LEXIS 2741 (Jan. 19, 2001); <u>Whitehead v. Warner Bros., Inc.</u>, 1999 D.D.C. LEXIS 22670 (Sept. 3, 1999) (Friedman, J.), *denial affm'd in same case* at 2001 U.S. App. D.C. LEXIS 2739 (Jan. 19, 2001); <u>Whitehead v. Time Warner, Inc.</u>, 1999 D.D.C. LEXIS 22668 (Sept. 3, 1999)(Friedman, J.), *denial affm'd in same case* at 2001 U.S. App. D.C. LEXIS 2715 (Jan. 19, 2001); <u>Whitehead v. New Line Cinema</u>, 1999 D.D.C. LEXIS 22476 (Sept. 3, 1999)(Friedman, J.), *denial affm'd in same case* at 2001 U.S. App. D.C. LEXIS 2741 (Jan. 19, 2001); <u>Whitehead v. Carroll & Graf Publishers, Inc.</u>, 1999 U.S. LEXIS 22475 (Sept. 3, 1999)(Friedman, J.); <u>Whitehead v. Dreamworks LLC</u>, 1999 D.D.C. LEXIS 22669 (Oct. 21, 1999)(Friedman, J.), *denial affm'd in same case* at 2001 U.S. App. D.C. LEXIS 2741

because, as was found with regard to the one he filed against Judge Friedman, the requests were "based solely upon plaintiff's displeasure with previous court rulings" in one or more of Whitehead's matters and not on any arguably valid reason for recusal.[165]

### D. Rule 11 Sanctions

This rancorous record marks Whitehead as a walking violation of Rule 11.[166]

---

(Jan. 19, 2001); Whitehead v. Dreamworks, 2000 D.D.C. LEXIS 20774 (June 14, 2000)(Friedman, J.), *denial affm'd in same case* at 2001 U.S. App. D.C. LEXIS 2741 (Jan. 19, 2001); *see also* Whitehead v. Tenet, U.S. App. D.C. LEXIS 18440 (July 27, 2001)(affirming denial of motion to recuse below); Whitehead v. Paramount Pictures Corp., 145 F.Supp.2d 3 (D.D.C. 2001)(Friedman, J.), *denial affm'd in same case* at 2000 U.S. App.D.C. LEXIS 11716 (Apr. 19, 2000); Whitehead v. Columbia Pictures, 2000 D.D.C. LEXIS 22188 at *16, *denial affm'd in same case* at 2001 U.S. App. D.C. LEXIS 2713 (Jan. 19, 2001); Whitehead v. Viacom, 233 F.Supp.2d 715 (D.Md. 2002)(Chasenow, J.), *denial affm'd in same case* at 2003 U.S. App. 4th Cir. LEXIS 9821 (Apr. 30, 2003); and Whitehead v. Microsoft, 2002 D.D.C. LEXIS 25507 (Dec. 19, 2002)(Kollar-Kotelly, J.), writ of mandamus to disqualify the trial judge denied in same case at 2002 D.D.C. 25507 (Dec. 19, 2002)(Kessler, J.).

In fact, as noted above in discussing the Whitehead paper at issue herein, by early 2002, he had used this term so many times that when he meant to state that the Rev. Jesse Jackson had "rescued" a downed American pilot from Syrian custody in 1984, Whitehead in fact used the term "recused" instead. *See* n.2, *ante*.

[165]  *See* Whitehead v. Carroll & Graf Publishers, Inc., 1999 D.D.C. LEXIS 22475 at *5-*6.

[166]  Rule 11 states in pertinent part as follows:

The signature of an attorney or party [on a pleading, motion, or paper] constitutes a certificate by the signer that the signer has read the ... [submission]; that to the best of the signer's knowledge, information, and belief formed *after reasonable inquiry it is well grounded in fact and is warranted by existing law* or a good faith argument for the extension, modification, or reversal of existing law, and *that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation* .... If a ... [submission] is signed in violation of his Rule, the Court upon motion *or upon its own initiative, shall impose* upon the person who signed it ... *an appropriate sanction* ....

Super. Ct. R. Civ. P. 11 (emphasis added).

As Judge Friedman found, "one need only look at his own stated intent for bringing many of these cases to know that Mr. Whitehead has no regard for our judicial system or the drain on its resources caused by his actions." [167] And this is not merely one U.S. District Court Judge who holds this opinion. Judge Chasenow of the Federal Trial Court in Maryland also found – in a 27-page Memorandum Opinion addressing Whitehead's mountebank record – that he "is clearly a vexatious litigant," every one of whose more than 30 lawsuits filed over the previous five years in various courts had "been dismissed or revolved in favor of the defendants." [168] Echoing the findings of Judge Friedman, that Court found that Whitehead "cannot possibly have a 'good faith belief in the merit of the action[s]' sounding in copyright infringement that he continues to file."[169] Both courts severely sanctioned him as a result.[170]

Nevertheless, Whitehead remains unaffected and undeterred, unrepentant and unreconstructed. If permitted to file actions sounding in the same nature that have been barred in at least two other courts, he will simply attempt to disinter those adjudicated corpses, pull the stake of "final judgment" out of their hearts, and march them undead and putrefying into the Superior Court. Even now, as Judge Chasenow found, he "continues to initiate new lawsuits that appear

---

[167]  Whitehead v. Paramount Pictures, 145 F.Supp.2d at 5.

[168]  Whitehead v. Viacom, 233 F.Supp.2d at 726-27; see also Whitehead v. Columbia Pictures, 2000 D. Md. LEXIS 22188 at *16 ("Every one of these suits has been dismissed or resolved in defendants' favor.")(Friedman, J.).

[169]  Whitehead v. Viacom, 233 F.Supp.2d at 726.

[170]  See Whitehead v. Paramount Pictures, 145 F.Supp.2d at 8 ("Plaintiff's most recent filings – which is as opaque, nonsensical and frivolous as those that preceded them – proves that neither adverse decisions, nor monetary sanctions, nor the award of attorney's fees will deter him. This Court will tolerate Mr. Whitehead's egregious abuses of the judicial system no longer and will sanction him accordingly." )(Friedman, J.) and Whitehead v. Viacom, 233 F.Supp.2d at 727 (finding that Whitehead had long since "proven that neither adverse decisions, nor monetary sanctions, nor the award of attorney's fees will deter him from filing his meritless suits")(Chasenow, J.).

-46-

to be as frivolous and without merit as earlier ones and that simply rehash claims that have already been disposed of on their merits." She concluded that Whitehead's "proven blatant disregard for this court and the judicial system as a whole suggests that there is no end in sight to the Plaintiff's frivolous and vexatious filings." [171]

## III. RULING AND RECOMMENDATIONS

Whitehead himself has virtually rendered moot his own Motion for Reconsideration before this Court.[172] Having had his case dismissed for lack of subject matter jurisdiction during a hearing in which it was amply discussed on the record that he suffered no prejudice and that, if he was willing to risk sanctions for defiantly proceeding on a copyright claim in *any* branch of a court that he well knew had no "arising under" subject matter jurisdiction pursuant to a federal statute that clearly vests original and exclusive jurisdiction in Article III trial courts only. Yet, he went right ahead and filed a claim in the Civil Division of the D.C. Superior Court, anyway – the latest sally in his stated campaign for a windfall.[173] In so doing, Whitehead has now troubled an unsuspecting Associate Judge of this Court with a new Civil Action, thus requiring the Defendant herein

---

[171] *Id.* at 726-27.

[172] Even if the instant case is transferred for *all* purposes to the calendar of an Associate Judge, it would *still* remain a "Small Claims Case," only subject to all the rules and circumscriptions of the Civil Division in general; the only significant difference would be that an Associate Judge would preside at a bench trial. *See* Small Claims Rule 8. The Plaintiff has never made a *jury* demand (or paid the requisite fee) under Small Claims Rule 6 in *this* matter and it is highly likely, therefore, that he has forfeited that right under that Rule and Civil Rule 38(b) & (d), even though it was otherwise guaranteed by the Seventh Amendment.

[173] And, in fact, as if to emphasize his "dragnet" approach to state a claim, Whitehead – even after all these years of copyright litigation – makes the egregious error of filing his new claim alleging a violation of the Lanham Act, 15 U.S. C. § 1125, which protects trademarks and service marks only, not copyrights. As noted above, in Section II B, the copyright law is codified at 17 U.S.C. § 101 *et seq.* and 18 U.S.C. § 2319.

and his legal counsel to file yet another motion in *that* case.[174]  Of course that Judge will make his or her own independent determination as to dismissal *vel non* on the jurisdictional issue.  Assuming that the Civil Action is dismissed, however, this Court strongly recommends the imposition of Rule 11 sanctions *and* that a similar prohibitory injunction issue against Whitehead as to any future such filings in the Superior Court.

. Over the last decade and more, Whitehead has dropped these litigatory coprolites in clerks' offices in trial and appellate courts throughout the entire East Coast.  If the door to the courthouse is cracked, he will continue to do so. As Judge Chasenow concluded, ordinary sanctions are completely inadequate to protect courts, judges, clerks, and the public from Mr. Whitehead.  What has happened – and is about to happen – here is clear from the foregoing extensive tragic history.  Having been excluded from filing copyright infringement suits in both the U.S. District Courts for the District of Columbia[175] and Maryland,[176] he now wishes to "open a new front" [177] in his war of attrition against the CIA, publishers, and others, this time in the D.C. Superior Court.  This, even though he knows full well, having filed every other copyright suit in Article III courts, that he literally has no business here – much less in this Court's Small Claims Branch. He is vexatiousness, litigiousness, and vindictiveness personified.  *Cf.* Pfeifer v. Valuka, 117 F.R.D. 420 (N.D. Ill. 1987)("Plaintiff's *pro se* status does not grant him an unfettered license to wage an endless campaign of harassment against the

---

[174]  In one of the bitterest ironies on this attenuated record, Whitehead actually stated that "Judicial Economy" was his main reason for filing a new suit and his motion to consolidate.  *See* Plaintiff's Mot. to Consolidate in C.A. 1405-05.

[175]  Whitehead v. Paramount Pictures, 145 F.Supp.2d at 8.

[176]  Whitehead v. Viacom, 233 F.Supp.2d at 727.

[177]  Proof that Mr. Whitehead is *not* "insane," but rather calculating, is that, having been there, he knows better than to trifle further with the U.S. District Court for the Eastern District of Virginia, so that that Court is not even an issue with him.

defendants or to abuse the judicial process; nor does it relieve him of the duty to conduct the inquiries required by Rule 11.").[178]

The only real remedies as to Mr. Whitehead are (1) the award of attorney's fees and costs to his latest victims here, (2) a court order requiring him to pay those fees and costs in full before proceeding in this or any other court, if ever, and (3) a prohibitory order requiring him to obtain leave of the court before filing any other lawsuit in any Division of the D.C. Superior Court. Both Judge Friedman[179] and Judge Chasenow[180] entered such prohibitory orders against Whitehead for their courts.

There is also ample precedent for such a prophylactic mandate here in the Superior Court. The leading trial level case on this approach here is Sindram v. Briggs, 120 D.W.L.R. 2305 (Oct. 28, 1992)(Suda, J.), in which, because of abuse of process and harassment of innocent defendants through misuse of the Small Claims Branch of this Court, the chronic plaintiff was fined $3,000 and enjoined from proceeding *pro se* or *in forma pauperis*.[181] Other Superior Court Judges have

---

[178]  Moreover, in the 42 days between the dismissal of this $5,000 Small Claims case and the filing of Whitehead's Civil Action, his *ad damnum* in the latter increased to $3.5 million – connoting a $3,495,000 "margin or error" in his original claim here.  *See* Complaint in C.A. 1405-05 at p. 4 (put another way, his damages are increasing at the rate of over $83,000 a day).

[179]  Whitehead v. Paramount Pictures, 145 F.Supp.2d at 8.

[180]  Whitehead v. Viacom, 233 F.Supp.2d at 726 -27 ("Furthermore, an analysis under the [governing case law and Whitehead's record] ... suggests that the requested injunctive relief [prohibiting further filings] is appropriate.").

[181]  The Court then found Sindram in violation of Rule 11 and sanctioned him by requiring that (1) he pay the defendant's attorney's fees and costs, (2) not file any further actions until and unless he had done so, and (3) even then, to obtain leave of the court before filing any new cases at all.  120 D.W.L.R. at 2312.  Up to that point, Sindram had filed a minimum of 40 suits in the Superior Court, 18 suits in U.S. District Courts (17 in the D.D.C.), and had sought 14 writs of certiorari to the U.S. Supreme Court.  Notably, after Judge Suda's order, we never heard from Mr. Sindram again.

imposed similar sanctions in cases involving bad faith litigants.[182]

The standards for issuing such an injunction against a *pro se* litigant[183] have been most precisely set forth in a prominent Eleventh Circuit case. They are: (1) the litigant's history of vexatious litigation; (2) the objective determination of the litigant's good faith belief in the merits of the submissions; (3) whether the litigant has caused needless expense or unnecessary burdens on the opposing party and/or the court; and (4) the adequacy of other sanctions. See Procup v. Strickland, 792 F.2d 1069, 1073 (11th Cir. 1986)(and cases cited); *see also* Safir v. United States Lines, Inc., 792 F.2d 19, 24 (2nd Cir. 1986). All these factors apply to Mr. Whitehead. As Judge Chasenow reasoned in issuing her prohibitory injunction against Whitehead, "it is clear that Plaintiff's access to the courts will

---

[182] See also Brown v. Sweeting, 115 D.W.L.R. 389 (Feb. 27, 1987)(Levie, J.)(Rule 11 sanction imposed on plaintiff landlord for misrepresentations in the complaint); Walter v. District of Columbia, 117 D.W.L.R. 1397 (July 7, 1989)(H.R. Taylor, J.)(defendant awarded attorney's fees via Rule 11 sanction in suit wherein plaintiff misrepresented theory of law in her complaint and failed to make requisite disclosures in discovery); Knox v. McDaniel, 117 D.W.L.R. 1897 (Sept. 12, 1989)(Levie, J.)(Rule 11 sanctions awarded for including claim under improper legal theory in L&T case); Apperson v. Greater S.E. Comm. Hospital, 118 D.W.L.R. 1341 (June 19, 1990)(Salzman, J.)(Rule 11 sanction for $3,500 imposed for filing suit without proper expert investigation); Wilson v. Hadid, 120 D.W.L.R. 1829 (Aug. 27, 1992)(Burnett, J.)(Rule 11 sanction of $2,500 imposed for filing suit on improper theory of law); Harper v. Chevy Chase Savings Bank, F.S.B., 121 D.W.L.R. 57 (Jan. 12, 1993)(Long, J.)(Rule 11 sanctions imposed for improper representations in complaint and on invalid legal theory); D.C. Metropolitan Police Dept. v. Fraternal Order of Police, 122 D.W.L.R. 1821 (Sept. 13, 1994)(Burnett, J.)(Rule 11 sanction of $11,771 imposed on plaintiff for non-compliance with statutory requirement in filing suit; Trout v. Franklin-Trout, 124 D.W.L.R. 201 (Feb. 2, 1996)(Dixon, J.)(Rule 11 sanction of $6,500 for filing duplicative motions without regard to previous adverse ruling); and Owen v. Owens, 132 D.W.L.R. 905 (Apr. 30, 2004)(Wertheim, J.)(Rule 11 creates an objective standard of reasonableness, *i.e.*, what a reasonable attorney would have done under the circumstances and what a competent attorney could reasonably believe, not the particular attorney's subjective intent).

[183] "*Pro se* petitioners have a greater capacity than most to disrupt the fair allocation of judicial resources because they are not subject to financial considerations – filing fees and attorney's fees – that deter other litigants from filing frivolous petition." *In re* Michael Sindram, 111 S.Ct. 596, 597 (1991)((commenting on this chronic litigant's 43rd *pro se* and *in forma pauperis* petition to the High Court).

not be denied by the injunction – he can file lawsuits with leave of the court and an accompanying affidavit." [184]

Of course, as Judge Suda wisely observed in Sindram, "It is a fundamental tenet of our jurisprudence that the public shall be allowed free and unfettered access to the courts to resolve their disputes." [185] This presumes, however, that there is good faith behind every claim, even if misperceived. "But," as Judge Charles Richey observed "'a continuous pattern of groundless and vexatious litigation can, at some point, support an order against further filing of complaints without the permission of the court.'" [186]

The lesson with Mr. Whitehead is clear and the remedy as compelling as it was in a 1983 California case that resonates uncomfortably close to this one. There a vexatious litigator insisted on prosecuting copyright infringement claims over a decade's time in over 30 courts, ultimately involving literally hundreds of defendants, against many of whom, after losing his case in one court, he simply re-filed the same claim in another, completely throwing the principles of *res judicata* and collateral estoppel to the wind. The U.S. District Court enjoined him from any further such filings. In upholding the trial court's injunction prohibiting him from not only re-filing those same claims in that court, but also in any ***other*** U.S. District Court, the Ninth Circuit recounted this eerily familiar history of litigiousness combined with dilatory and vexatious trial tactics:

> Our approval of an anticipatory injunction against relitigation is premised on two factors uniquely present in this case .... [It] involved so many defendants on such baseless claims that it became particularly important that these defendants, once victorious, have an expedient way of blocking future attempts to relitigate the same

---

[184] Whitehead v. Viacom, 233 F.Supp.2d at 33.

[185] 120 D.W.L.R. at 2305.

[186] Sparrow v. Reynolds, 646 F.Supp. 834, 389-40 (D.D.C. 1986)(*quoting* In re Oliver, 682 F.2d 443, 446 (3rd Cir. 1982)).

issues. Moreover, the history of this case shows that such future attempts are highly likely. In the past ... [the Plaintiff]'s rate of litigation has been stimulated rather than slowed by adverse judgments.

To understand the narrowness of our present decision, it is important to understand the scope and nature of ... [the Plaintiff]'s litigiousness. From a simple employment dispute originally filed in small claims court, ... [he] has produced a morass of litigation, into which he has pulled over 250 defendants and, at one point, over 30 district courts. It is the style of ... [his] litigation, however, not merely its abundance, that justifies the district court's order. [He] ... has clearly shown this court and to the district court that, unless enjoined, he will continually attempt to renew his conflict with the ... [Defendant]. In both ... [previous] action[s], ... [he] sought repeatedly to amend his complaints, his motions, and ultimately, the judgments entered against him. In addition to continual amendments, ... [his] litigation style includes rekindling his litigation in a new action just as it is extinguished, or about to be extinguished, in an earlier action. [His] ... first lawsuit was directly against his employer. When that action was dismissed by a U.S. Magistrate for abuse of discovery, ... [he] filed a second action claiming that the Magistrate had ben fraudulently biased. Having lost his action against the Magistrate, Wood shifted his original copyright claims and redirected his litigation against all those publishers that he believes published his ... [work] .... Given this history, and given the limited resources of the judicial system, it was not an abuse of discretion to issue an injunction against ... [him] in anticipation of future lawsuits that might repeat [those ones that have previously been resolved against him].

Wood v. Santa Barbara Chamber of Commerce, 1983 9th Cir. LEXIS 27875 at *14-*16 (Jan. 4, 1983)(footnotes and citations omitted). This account reads like a page taken directly out of Whitehead's own version of von Clausewitz's classic work on waging war.[187] To avoid opening yet another front here, something must

---

[187] The famous Prussian General Karl Von Clausewitz 's (1780-1831) classic study *Vom Kriege* ("*On War*") (1832) has been considered for generations the most significant piece of military scholarship ever written. (Sample theorems: "*Four elements make up the climate of war: danger, exertion, uncertainty, and chance.*" and "*We may demonstrate to the enemy the unacceptable cost of his struggle by: invading his territory; conducting*

be done first.

Based on the foregoing, it is by this Court this **31** day of March 2005,

1. **ORDERED** that the Plaintiff's Motion for Reconsideration be, and the same hereby is, **GRANTED**; and, inasmuch as the Plaintiff has already filed a Civil Action of the same nature, it is

2. **RECOMMENDED** that this case be certified to the calendar of the Associate Judge before whom C.A. No. 1405-05 is currently pending; and it is further

3. **FURTHER RECOMMENDED** that, should either or both of those cases be dismissed on lack of subject matter jurisdiction or similar grounds, that Associate Judge impose sanctions under Rule 11 as follows:

    **a.** Require that the Plaintiff pay the Defendants all reasonable attorney's fees, costs, and other reasonably related expenses in ***both*** these matters; and

    **b.** Require that these aforementioned fees and costs be paid in full, with proof of same and notification from Defendants' Counsel, as a precondition for pursuing this, or any similar suits in any Division of the Superior Court; and that

    **c.** Even if and when said fees, costs, and expenses, have been paid in full, the Plaintiff be the subject of an anticipatory injunction that precludes him from pursuing ***any*** similar claims in any Division of the Court without first seeking leave of Court to pursue same past actual filing; and

---

operations to increase his suffering; or by wearing down the enemy."). Mercifully, because he has been dead now for nearly 175 years, the General's published works are beyond any copyright infringement claims by Mr. Whitehead.

**d.** That for any such initial filings, the Plaintiff be required to pay all filing fees and related costs and not receive the benefit of *gratis* filing of any such claims; and that

**e.** The Plaintiff be expressly admonished that any violation of any terms of such an Order will subject him to citation for contempt of court; and it is

4. **FURTHER ORDERED** by the undersigned currently presiding in the Small Claims Branch, that a copy of this Memorandum Order of Certification be mailed by the Office of the Clerk in this Branch of the Court to the Chief Judges of the hereinafter-named trial courts in the three local contiguous jurisdiction so that their Courts may have access to the full record of the Plaintiff's litigatory history up to this point, in the event they also may be called upon to take steps similar to those recommended herein; and, finally, it is

5. **FURTHER ORDERED** that, so as to avoid any further needless expense and draining of judicial resources at the *appellate* level, this Memorandum Order of Certification is **NOT** a "final order" and is **_NOT_** properly appealable to the D.C. Court of Appeals, and that any attempt to do so may subject the Plaintiff/Appellant to the Appellee's request for fees and costs associated with that action, pursuant to D.C. Ct. App. R. 38. This is an especially apt admonition because, as noted above, his motion for reconsideration and certification has, in fact, been "**granted**" by this Memorandum Order.[188]

_____
RONALD A. GOODEREAD
MAGISTRATE JUDGE
(Signed in Chambers)

---

[188] The Plaintiff may, however, properly lodge any objections or exceptions to any findings herein with the Associate Judge to whom the matter is being certified.

Copies to:

Mr. David L. Whitehead
Apt. 1
9 Fourth Street, N.E.
Washington, DC 20002

Amber L. Husbands, Esq.
DAVIS WRIGHT TREMAINE, LLP
Suite 450
1500 K Street, N.W.
Washington, DC 20005-1272

Chief Judge of the D.C. Superior Court
Presiding Judge of the Civil Division
Deputy Presiding Judge of the Civil Division
Presiding Magistrate Judge

Chief Judge, General District Court of Prince George's County, MD
Chief Judge, Circuit Court of Prince George's County, MD
Chief Judge, General District Court of Montgomery County, MD
Chief Judge, Circuit Court of Montgomery County, MD

Chief Judge, General District Court of Arlington County, VA
Chief Judge, Circuit Court of Arlington County, VA
Chief Judge, General District Court of Alexandria, VA
Chief Judge, Circuit Court of Alexandria, VA
Chief Judge, General District Court of Fairfax County, VA
Chief Judge, Circuit Court of Fairfax County, VA

Chief Judge, U.S. District Court for the District of DC
Chief Judge, U.S. District Court for the District of MD
Chief Judge, U.S. District Court for the E.D. VA
Chief Judge, U.S. District Court for the W.D. VA