*Whitehead v. Twentieth Century Fox Film Corp., Inc.*
CIVIL ACTION NO. 1:05-cv-01462-GK

# DECLARATION OF
# JEANETTE MELENDEZ BEAD

# EXHIBIT 9

Westlaw.

Not Reported in F.Supp.2d  
2001 WL 1218908 (D.D.C.)  
(Cite as: 2001 WL 1218908 (D.D.C.))

Page 1

Only the Westlaw citation is currently available.

United States District Court, District of Columbia.  
David L. WHITEHEAD, Plaintiff,  
v.  
COLUMBIA PICTURES INDUSTRIES, INC., et al., Defendants.  
No. CIV. A. 98-2938 (PLF.

June 14, 2001.

ORDER

FRIEDMAN, District J.

*1 For the reasons stated by the Court in its Opinion issued this same day, it is hereby

ORDERED that plaintiff's motion to withdraw his December 30, 1999, filings, to place them under seal, and to permit his December 6, 1999, filing to be used as his response to defendants' motions for summary judgment [58-1, 58-2] is GRANTED in part and DENIED in part. Plaintiff's December 30 filings may not be withdrawn. The December 30 filings will not be placed under seal and will remain on the public record. Plaintiff's December 6 filing will be considered, in conjunction with his December 30 filings, as his response to defendants' motions for summary judgment; it is

FURTHER ORDERED that plaintiff's motion to dismiss this case without prejudice [62-1] is DENIED; it is

FURTHER ORDERED that plaintiff's motion for sanctions [68-1] is DENIED; it is

FURTHER ORDERED that plaintiff's motions for reconsideration of the Court's December 17, 1999, Order regarding plaintiff's Rule 56(f) request [49-1, 51-1, 60-1] are DENIED; and it is

FURTHER ORDERED that plaintiff's motion to strike defendants' summary judgment motions [53-1] is DENIED.

SO ORDERED.

OPINION

The Court has before it four motions for summary judgment filed by defendants and eleven motions filed by plaintiff David L. Whitehead, including cross-motions for summary judgment. The Court already has ruled on some of plaintiff's motions, but eleven motions which directly affect the Court's consideration of defendants' summary judgment motions are still pending. The Court will first address those outstanding motions and then turn to the substance of defendants' motions for summary judgment.

I. BACKGROUND

Plaintiff filed this action alleging copyright infringement and various related claims on September 22, 1998, in the Superior Court of the District of Columbia. Plaintiff filed his First Amended Complaint on November 19, 1998. The case was removed to this Court on December 2, 1998. This Court subsequently stayed all proceedings in this case while a similar suit brought by plaintiff was under consideration. Finding that plaintiff's claims in that case were patently frivolous and objectively unreasonable, the Court dismissed the case with prejudice on June 30, 1999. *Whitehead v. Paramount Pictures Corp.,* 53 F.Supp.2d 38, 54 (D.D.C.1999), aff'd, No. 99-7137 (D.C.Cir. April 19, 2000).

The Court immediately lifted the stay in this case and ordered that if plaintiff did not file a motion for leave to amend or to voluntarily dismiss this action by July 16, 1999, the Court would accept summary judgment motions from defendants shortly thereafter. *See* Order of June 30, 1999. After numerous delays and the disposition of dozens of frivolous, dilatory motions filed by plaintiff, the Court extended plaintiff's deadline to November 8, 1999. When plaintiff again failed to act by that date, defendants filed their motions for summary judgment.

On December 6, 1999, plaintiff filed a response to defendants' motions for summary judgment that included a request for discovery pursuant to Rule 56(f) of the Federal Rules of Civil Procedure. The Court denied plaintiff's Rule 56(f) motion on December 17, 1999, and extended the time for him to properly oppose defendants' summary judgment motions until December 30, 1999. Between November 24, the date on which defendants'

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                         Page 2
2001 WL 1218908 (D.D.C.)
(Cite as: 2001 WL 1218908 (D.D.C.))

summary judgment motions were filed, and December 30, plaintiff filed nine additional motions, including several motions for extensions of time and for the Court to reconsider prior rulings and, inexplicably, a motion for default judgment. All of these motions were resolved by the Court and no longer are pending.

*2 On December 30, 1999, plaintiff filed a series of motions, oppositions and cross-motions opposing defendants' motions. Those filings included requests that the Court reconsider its order regarding plaintiff's Rule 56(f) motion, that the Court strike defendants' motions for summary judgment, and that the Court grant partial summary judgment for plaintiff with respect to three of the movies listed in his Amended Complaint. Plaintiff followed up with a January 3, 2000, motion requesting that the Court allow him to withdraw the December 30 filings, and a January 5, 2000, motion to dismiss this case without prejudice.

II. PLAINTIFF'S MOTIONS

Since finding plaintiff's first copyright infringement case to be utterly frivolous and without merit, the Court repeatedly has encouraged plaintiff to reevaluate his claims in this and other suits currently before the Court and to carefully consider the wisdom of prospective filings with the Court, particularly in light of the Copyright Act's fee shifting provision. Despite these admonitions, plaintiff once again has flooded the Court with barely coherent pleadings and motions that collectively signify little more than plaintiff's adroitness with the cut-and-paste function of his word processor. The Court is cognizant of the fact that plaintiff is proceeding *pro se* and understands that a certain degree of latitude must be given to a *pro se* plaintiff, but Mr. Whitehead has gone to particularly extraordinary lengths to test the Court's resources and patience. Nevertheless, the Court has carefully considered each of plaintiff's pending motions.

*A. Motion to Withdraw Filings*

On the first business day after filing his oppositions to defendants' summary judgment motions, plaintiff filed a motion requesting that the Court allow him to withdraw those filings and place them under seal. The motion also requested that the Court consider his December 6 motion for discovery as his opposition to defendants' summary judgment motions. [FN1] Two days later, plaintiff filed a motion to dismiss the entire case without prejudice. Defendants responded to these two motions and plaintiff filed a consolidated reply. The Court will grant in part and deny in part plaintiff's motion to withdraw his filings and place them under seal. Plaintiff's motion to dismiss is addressed in subsection B below.

> FN1. Plaintiff's December 6 filing originally was captioned as a response to defendants' motions and as a motion for discovery pursuant to Rule 56(f). Plaintiff subsequently filed an errata with the Clerk of the Court requesting that the filing be considered only as a motion for discovery and not as a response to defendants' motions. Plaintiff now appears to prefer that his filing revert to its original form.

Plaintiff suggests that he should be permitted to withdraw his December 30 filings because, despite the certificates of service attached to the filings which state "under the laws of perjury" that he had already served copies of the filings on the defendants, he in fact never did. [FN2] Plaintiff provides no justification whatsoever for placing the filings under seal. Finally, plaintiff asks the Court to consider his December 6 motion for discovery as his opposition to defendants' summary judgment motions, primarily because of faulty or incomplete legal advice that he claims to have received from a friend or acquaintance.

> FN2. As further justification for his request, plaintiff makes reference to an alleged conspiracy to thwart his attempts to litigate this case and several other of his past and present lawsuits. Plaintiff suggests that this conspiracy is laid bare by one alleged conflict of interest involving this Court and a separate alleged conflict of interest involving plaintiff's former attorneys. Plaintiff makes similar arguments in his December 30, 1999, motion to strike defendants' summary judgment motions. The Court has addressed these arguments on numerous occasions in the past and has found them to be without merit. Because plaintiff's conspiracy theories have been examined and dismissed previously, and because they appear to have been cut-and-pasted into most of plaintiff's pending motions with little or no attempt to link such theories to the relief requested in the present motions, such "arguments" are rejected and will not be addressed further in this Opinion.

*3 The Court understands plaintiff's reluctance to allow his December 30 filings to remain on the record, particularly in light of prior instances where

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

plaintiff's sworn statements on certificates of service have been brought into serious question. *See* Memorandum Opinion and Order of December 8, 1999, *Whitehead v. Carroll and Graf Publishers,* Civil Action No. 98-0202. Regardless of these concerns, and despite the fact that defendants were not served with the December 30 filings and never received them, the Court will permit plaintiff's filings to remain on the record and will consider them, in conjunction with his December 6 filing, as plaintiff's response and opposition to defendants' motions for summary judgment. With the understanding that the Court does not intend to sanction plaintiff for his possibly perjurous statements in this instance, there is no conceivable prejudice to plaintiff in the Court considering the full range of his arguments contained in both the December 6 and the December 30 filings and in ruling on his December 30 motions. Because plaintiff does not provide a reason to seal the filings and because the Court, after reading them, sees no possible justification for doing so, the motion to seal will be denied.

*B. Motion to Dismiss without Prejudice and Motion for Sanctions*

Rule 41 of the Federal Rules of Civil Procedure permits a plaintiff to dismiss a case as of right if an answer or motion for summary judgment has not been served on the defendant. *See* Rule 41(a)(1), Fed.R.Civ.P. Because defendants have filed motions for summary judgment, however, this case may not be dismissed on plaintiff's request "save upon order of the court and upon such terms and conditions as the court deems proper." Rule 41(a)(2), Fed.R.Civ.P.

In response to plaintiff's spartan, one page motion to dismiss without prejudice, defendants argue that such a dismissal would unfairly prejudice them and urge the Court to deny the motion. Defendants note that while dismissal at this stage of virtually any litigation would prejudice the defendants moving for judgment, dismissal without prejudice would be particularly prejudicial in this case because of this plaintiff's history as a vexatious litigant. Defendants argue that the instant motion was made solely to avoid an adverse determination on the merits of their motions for summary judgment and suggest that if given the opportunity plaintiff will simply re-file this arguably frivolous lawsuit again in this Court or in another court with the hope of harassing defendants into a nuisance settlement. These arguments, while necessarily speculative, are not without a basis in fact. *See D'Alto v. Dahon California, Inc.,* 100 F.3d 281, 283 (2d Cir.1996).

In the last eight years, plaintiff has filed no less than 23 lawsuits in this jurisdiction. In addition to this and six other copyright infringement cases currently pending before this Court, plaintiff has filed numerous suits against other film companies, publishing companies, actors, producers, writers and directors, President Clinton, the United States Department of Justice, the Washington Post, the Internal Revenue Service, a District of Columbia School Superintendent, the CIA, and Georgetown University. Every one of these suits has been dismissed or resolved in defendants' favor. [FN3] Furthermore, defendants' counsel have offered declarations, unrebutted by plaintiff, that plaintiff has indicated that his sole purpose in bringing this and other copyright lawsuits is to extract nuisance settlements. *See* Declaration of Jeffrey W. Kilduff, attached to defendants' Motion for Stay and Sanctions, Dec. 2, 1998 ("Mr. Whitehead explained that he had filed yet another copyright infringement case ... adding numerous additional movies and songs to his list of allegedly infringing works .... Mr. Whitehead also stated that he would stop suing defendants and other studios if defendants would simply pay him money to go away. Mr. Whitehead again made clear that he intends to continue inundating the defendants and this Court with copyright infringement actions in the hopes of extracting a nuisance settlement."); Declaration of Jeffrey W. Kilduff, attached to Motion for Protective Order, Nov. 19, 1996, *Whitehead v. Paramount Pictures Corp.,* Civil Action No. 96-2436 (D.D.C) ("Plaintiff has repeatedly explained that he would continue with his barrage of motions so that Defendants would have to incur substantial legal fees in order to respond. He has admitted that his strategy is to make litigating this case so expensive to Defendants that they will pay plaintiff to go away.").

> FN3. *Whitehead v. Clinton,* Civ. Action No. 99-2891 (D.D.C.) (dismissed), *aff'd,* 2000 WL 520719 (D.C.Cir. March 23, 2000); *Whitehead v. DreamWorks,* Civ. Action No. 98-1917 (D.D.C.) (dismissed this same day); *Whitehead v. Columbia Pictures,* Civ. Action No. 98-1882 (D.D.C.) (dismissed this same day); *Whitehead v.. New Line Cinema,* Civ. Action No. 98-1231 (D.D.C.) (dismissed this same day); *Whitehead v. Time Warner,* Civ. Action No. 98-0257 (D.D.C.) (dismissed this same day); *Whitehead v. Metro Goldwyn Mayer,* Civ. Action No. 98-0256 (D.D.C.) (dismissed this same day); *Whitehead v. Carroll & Graf,* Civ. Action No. 98-0202 (D.D.C.)

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(dismissed); *Whitehead v. Warner Bros.,* Civ. Action No. 97-0752 (D.D.C.) (dismissed this same day); *Whitehead v. Paramount Pictures Corp.,* Civ. Action No. 96-2436, 53 F.Supp.2d 38 (D.D.C.1999) (dismissed), *aff'd,* No. 99-7137 (D.C.Cir. April 19, 2000); *Whitehead v. Paramount Pictures Corp.,* Civ. Action No. 96-1616 (D.D.C.) (dismissed), *aff'd,* 1997 WL 150111 (D.C.Cir. Feb. 27, 1997); *Whitehead v. Smith,* Civ. Action No. 96-1307 (D.D.C.) (dismissed), *aff'd,* 1996 WL 761937 (D.C.Cir. Dec. 20, 1996); *Whitehead v. Deutch,* Civ. Action No. 96-0420 (D.D.C.) (dismissed), *aff'd,* 1997 WL 573476 (D.C.Cir. Aug. 22, 1997), *cert. denied,* 522 U.S. 1129 (1998); *Whitehead v. Days,* Civ. Action No. 96-0159 (D.D.C.) (dismissed), *aff'd,* 1996 WL 525507 (D.C.Cir. Aug. 16, 1996); *Whitehead v. Reno,* Civ. Action No. 96-0049 (D.D.C.), *aff'd,* 1996 WL 761943 (D.C.Cir. Dec. 27, 1996); *Whitehead v. Washington Post,* Civ. Action No. 95-1647 (D.D.C.) (dismissed), *aff'd,* 1996 WL 246815 (D.C.Cir. Apr. 18, 1996), *cert. denied,* 519 U.S. 877 (1996); *Whitehead v. O'Donovan,* Civ. Action No. 12393-94 (D.C.Sup.Ct.); *Whitehead v. O'Donovan,* Civ. Action No. 7034-94 (D.C.Sup.Ct.); *Whitehead v. Commissioner of Internal Revenue,* 1994 WL 730903 (D.C.Cir. Dec. 14, 1994) (dismissing appeal from tax court for lack of jurisdiction); *Whitehead v. Greenstein,* Misc. No. 94-0085 (D.D.C.) (denying motion to enforce subpoena), *aff'd,* 1994 WL 535410 (D.C. Cir. Sept. 26, 1994); *Whitehead v. Greer,* Civ. Action No. 93-2023 (D.D.C.) (dismissed), *aff'd,* 1994 WL 189133 (D.C. Apr. 19, 1994), *cert. denied,* 513 U.S. 966 (1994); *Whitehead v. Jenifer,* 1992 WL 311212 (D.C.Cir. Oct. 14, 1992) (dismissed), *cert. denied,* 506 U.S. 1084 (1993); *Whitehead v. Gates,* Civ. Action No. 92-0917 (dismissed), *aff'd,* 1993 WL 328105 (D.C.Cir. July 27, 1993).

*4 Plaintiff asserts that the Court should permit him to voluntarily dismiss this case without prejudice, regardless of defendants' arguments, because of an unspecified ruling in one of plaintiff's past suits, because an unrelated case that recently was dismissed by this Court is on appeal, because of certain actions taken by plaintiff's former counsel, because the defendants' pending motions for summary judgment are allegedly frivolous, and because of the usual array of supposed conspiracies. In his reply plaintiff also requests that the Court impose sanctions on defendants for attempting to communicate with plaintiff while represented by counsel. Plaintiff's rambling arguments lack any semblance of logic, reason, or reality and are completely devoid of a genuine basis in law or fact; indeed, they smack of insincerity and adhere to a long pattern of dilatory arguments made by plaintiff, suggesting once again that plaintiff would file anything and make any motion that would delay or prevent this Court from resolving his claims on the merits. His unfounded motion for sanctions is frivolous and does not merit discussion.

Because plaintiff has failed to provide a valid justification for permitting the withdrawal of his complaint at this stage of the litigation, and because dismissal without prejudice at this point would be severely prejudicial to the defendants--who have spent thousands of dollars and several years tolerating one delay after another in this case--plaintiff's motion to dismiss without prejudice will be denied. *See Chambers v. Gesell,* 120 F.R.D. 1, 3 (D.D.C.1988). Plaintiff's motion for sanctions also will be denied.

*C. Motions to Reconsider*

In his first motion for reconsideration, filed December 30, 1999, plaintiff asks the Court to reconsider its December 17, 1999, order denying his motion for discovery pursuant to Rule 56(f) of the Federal Rules of Civil Procedure, but does not provide any justification for doing so. In his second motion, also filed on December 30, 1999, plaintiff requests the shooting scripts for four movies and, puzzlingly, one song. Plaintiff provides the Court with a brief procedural history of a different suit plaintiff brought in this Court, which has been dismissed, and lists several cases that address the legal standard for copyright infringement. What plaintiff's motion does not include, however, is even the most basic requirements of a proper Rule 56(f) motion. Plaintiff's third motion for reconsideration, filed January 3, 2000, is similar to the first motion--it is very brief, largely incoherent, and with no apparent merit. For the reasons stated in the Court's order of December 17, 1999, and because plaintiff has failed to give the Court even the slightest reason why it should reconsider its earlier ruling, all three motions for reconsideration will be denied.

III. SUMMARY JUDGMENT MOTIONS
*A. Background*
In 1996, plaintiff began filing lawsuits against

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

various motion picture studios alleging that a wide range of movies--including comedies, thrillers, spy movies, mysteries, and even animated and historical films--were based on certain works allegedly copyrighted by plaintiff. Plaintiff contends that his writings have been intercepted by and passed among most major Hollywood studios, all of whom have colluded with the United States government, the FBI, the DEA, the United States Army, the United States Navy and, in particular, the CIA, in a "pattern of economic espionage" to unfairly reap "billions of dollars" by "stealing" from his works. Amended Complaint at 3, 5.

*5 On June 30, 1999, the Court granted summary judgment for defendants in the first of plaintiff's copyright lawsuits, finding that the movies *Mission Impossible* and *Bad Company* did not infringe plaintiff's copyright on his self-published book entitled *Brains, Sex, & Racism in the CIA and the Escape* ("*BS & R* "). See Whitehead v. Paramount Pictures Corp., 53 F.Supp.2d 38 (D.D.C.1999), aff'd, No. 99-7137 (D.C.Cir. April 19, 2000). The Court found plaintiff's case to be patently frivolous and his claims objectively unreasonable. See id. at 54. The Court strongly suggested that plaintiff might wish to reevaluate his claims in this copyright infringement case and the six others pending before the Court. Despite affording him ample opportunity to amend his complaint or voluntarily dismiss this action, plaintiff has maintained this suit in its present form and relies on the claims in his Amended Complaint of November 19, 1998.

*B. Summary Judgment Standard*

Plaintiff has brought suit against Paramount Pictures Corporation ("Paramount") (sued as Paramount Pictures in the Amended Complaint), Walt Disney Pictures and Television ("WDPT") (sued as Walt Disney Pictures Corporation and as Touchstone Pictures Inc.), The Walt Disney Company ("TWDC") (sued as Walt Disney Corporation), DreamWorks LLC ("DreamWorks") (sued as Dreamworks Pictures LLC), Columbia Pictures Industries, Inc. ("Columbia"), Sony Pictures Entertainment Inc. ("Sony"), Time Warner, Inc. ("Time Warner") (sued as Time Warner), Warner Bros., a division of Time Warner Entertainment Company, L.P. ("Warner Bros.") (sued as Warner Bros., Inc.), 20th Century Fox, New Line Cinema, Viacom, Inc. ("Viacom"), author Terry McMillan, and unnamed producers, writers and other production companies allegedly associated with the films *Jerry Maguire, Most Wanted, U.S. Marshal, A Perfect Murder, Titanic, The Saint, Prince of Egypt, Why Do Fools Fall in Love, How Stella Got Her Groove Back,* novelizations of *The Saint* and *U .S. Marshal,* the song *How Do I Live,* and "possibly ... other movies and novels produced during 1994 through 1998." Amended Complaint at 1-3.

Plaintiff alleges copyright infringement under 17 U.S.C. § 101, et seq., breach of implied contract, bad faith dealings, misappropriation of intellectual material, intentional infliction of emotional distress, retaliation, and unfair competition under 15 U.S .C. § § 1117, 1125(a). See Amended Complaint at 1, 44-49. Plaintiff seeks injunctive relief, declaratory relief, attorneys' fees and costs, and damages totaling "not less than TWO BILLION DOLLARS ($2,000,000,000)." Amended Complaint at 50-54 (emphasis in original).

Plaintiff alleges that each of the movies, novels and songs listed above derive primarily from *BS & R,* an autobiographical book about plaintiff working for and getting fired by the CIA, and *Escape from CIA,* a one-page script based on *BS & R.* Plaintiff also claims that defendants' works infringe the alleged copyrights on his novel *How Rebecca Zinani Madison Got Her Freak Off* ("*Rebecca* "), his poems *In a Box Controlled by House Negroes* ("*In a Box* ") and *Going Home,* a short story and play entitled *The Big Bad Wolf v. Ms. Little Red Riding Hood, the Mike Tyson Story* ("*Big Bad Wolf*"), his play *God v. Satan,* and a song entitled *Christmas Isn't the Same Without You.* [FN4]

> FN4. Plaintiff failed to provide the Court or defendants with copies of *Going Home* and *Big Bad Wolf,* and only provided portions of *Rebecca* and *God v. Satan.* Plaintiff also failed to provide the Court with any proof in this case that *Escape from CIA, Going Home,* or *In a Box* were ever copyrighted. The Court does take judicial notice, however, that plaintiff has provided sufficient proof in a separate copyright action that his poem *Going Home* is copyrighted.

*6 Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted if the pleadings, depositions, answers to interrogatories, admissions on file and affidavits show that there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law. Rule 56(c), Fed.R.Civ.P. Material facts are those "that might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc ., 477

U.S. 242, 248 (1986). In considering a motion for summary judgment, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255; *see also Washington Post Co. v. U.S. Dept. of Health and Human Services,* 865 F.2d 320, 325 (D.C.Cir.1989).

Plaintiff's complaint was filed *pro se.* Although complaints filed without the assistance of counsel are held "to less stringent standards than formal pleadings drafted by lawyers," *Haines v. Kerner,* 404 U.S. 519, 520 (1972), the non-moving party's opposition must consist of more than mere unsupported allegations or denials and must be supported by affidavits or other competent evidence setting forth specific facts showing that there is a genuine issue for trial. Rule 56(e), Fed.R.Civ.P.; *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). The non-moving party is "required to provide evidence that would permit a reasonable jury to find" in his favor. *Laningham v. U.S. Navy,* 813 F.2d 1236, 1242 (D.C.Cir.1987). If the evidence is "merely colorable" or "not significantly probative," summary judgment may be granted. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 249-50.

### C. Copyright Infringement

To establish copyright infringement, a plaintiff must prove (1) "ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publications, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 361 (1991); *see Stenograph L.L.C. v. Bossard Assoc., Inc.,* 144 F.3d 96, 99 (D.C.Cir.1998). In this case, the first element is not in dispute with respect to many of plaintiff's writings because a certificate of copyright constitutes *prima facie* evidence of ownership of a valid copyright, *see Stenograph L.L.C. v. Bossard Assoc., Inc.,* 144 F.3d at 99, and plaintiff has submitted certificates of copyright for *BS & R, Rebecca, God v. Satan, see* Amended Complaint (unmarked exhibits), for *Christmas Isn't the Same Without You* and *Big Bad Wolf, see* Plaintiff's December 6, 1999, Response to Defendants' Motions for Summary Judgment (unmarked exhibits), and for *Going Home, see* Complaint in *Whitehead v. DreamWorks LLC,* Civ. Action No. 98-1917 (D.D.C.) (unmarked exhibit). Plaintiff has failed to present similar certificates for *Escape from CIA* or *In a Box,* and thus may not claim copyright infringement of either of these works. Nevertheless, the Court will consider these works in its analysis below on the off chance that the certificates of copyright for these three works do exist but have been omitted from plaintiff's filings in error, however unlikely that may be.

*7 With respect to the second element of copyright infringement, in the absence of direct evidence of copying a plaintiff may prove copying by establishing (1) that defendants had access to the copyrighted work, and (2) the substantial similarity between the protectible material in plaintiff's and defendants' works. *See Williams v. Crichton,* 84 F.3d 581, 587 (2nd Cir.1996); *see* 4 NIMMER ON COPYRIGHT § 13.03[A] (1997). Mr. Whitehead has provided no direct evidence of copying, so he has the burden of establishing both substantial similarity and access. [FN5]

> FN5. The Court discussed the concept of substantial similarity at length in its opinion in *Whitehead v. Paramount Pictures Corp.,* 53 F.Supp.2d at 46-48 (D.D.C.1999). Because this case was stayed pending the resolution of *Whitehead v. Paramount Pictures,* and because the parties here were specifically instructed to rely on and refer to the method of analysis adopted in that opinion, the Court incorporates and relies on such analysis herein.

Mr. Whitehead's allegations of copyright infringement are confusing at best. While the allegedly infringing films, books and songs are sufficiently explained, plaintiff often fails to identify the defendant(s) associated with each work or which of plaintiff's writing(s) allegedly inspired each work. Nevertheless, upon careful review of plaintiff's Amended Complaint and his subsequent filings, and after examining extensive selections from plaintiff's writings and defendants' works, the Court concludes that the similarities alleged by plaintiff do not come close to meeting the substantial similarity test, that the alleged similarities do not concern any protectible element of any of plaintiff's works, and that no reasonable trier of fact could find the works substantially similar. Summary judgment therefore will be granted. *See Williams v. Crichton,* 84 F.3d at 587 (summary judgment appropriate if "similarity concerns only noncopyrightable elements of plaintiff work, or no reasonable trier of fact could find the works substantially similar") (internal quotations omitted); *Nelson v. Grisham,* 942 F.Supp. 649, 652 (D.D.C.1996) (summary judgment appropriate "where the works are so dissimilar that a claim of infringement is without merit") (internal quotations omitted). [FN6]

> FN6. Because the Court concludes that Mr. Whitehead has failed to establish substantial

similarity, it does not need to reach the issue of access. *See Nelson v. Grisham, 942 F.Supp. at 652* (question of access "ultimately irrelevant" where plaintiff cannot establish substantial similarity).

### 1. *Titanic, The Saint and Most Wanted*

Plaintiff first alleges that defendants Viacom, Paramount, 20th Century Fox, Time Warner and unnamed producers, writers and other production companies infringed his copyrights on *BS & R, Escape from CIA, Going Home, In a Box, Big Bad Wolf* and *God v. Satan* by making and/or distributing the films *Titanic* and *The Saint* and by publishing the novelization of *The Saint*. The first of these allegations is perhaps plaintiff's most audacious. Plaintiff asserts that the movie *Titanic,* a film about the sinking of that ocean liner in 1912 and a fictional on-board romance that occurred during the tragedy, infringes his copyright on *BS & R,* an autobiography about plaintiff's employment with and eventual discharge from the CIA. Plaintiff asserts that his works are similar to the film *Titanic* because both include "romance, class, race, male trophy struggles for females, discussions of ships, and escape scenes." Amended Complaint at 12.

One of the specific examples plaintiff offers to prove substantial similarity is that in *BS & R,* a female named Tiger mentions that she wants to have sex in a pickup truck, while in *Titanic* the lead characters have sex in the back of a car. Amended Complaint at 13. Plaintiff also points out that, just as the lead female character in Titanic appears nude in front of the lead male character, "[i]n the Plaintiff's book, a beautiful married woman in the bathroom strips nude and comes out naked in the presence of the David." Plaintiff's December 30, 1999, Cross-Motion for Summary Judgment at 6-7. Such stock themes as back-seat sex and the appearance of nude women simply are not protectible under copyright law and, contrary to his assertion plaintiff does not hold exclusive rights to such scenes. *See Whitehead v. Paramount Pictures Corp., 53 F.Supp.2d at 51-52*.

*8 Plaintiff also asserts that *Titanic* infringes on his work because: (1) his book discusses people jumping off a ship and refers to "the American Ship, the Ship of Democracy, the Ship of Power, and the Ship of Freedom;" (2) both works discuss fog; (3) both works involve beautiful women; (4) both involve the difficulties faced by minorities; and (5) both involve men who are angry at unfaithful women. Amended Complaint at 12-13. The similarity suggested by plaintiff is too abstract, tenuous and generalized. Such general themes simply are not protectible. *See Whitehead v. Paramount Pictures Corp., 53 F.Supp.2d at 49, 51; Berkic v. Crichton, 761 F.2d 1289, 1294 (9th Cir.), cert. denied, 474 U.S. 826 (1985)* ("Depictions of the small miseries of domestic life, romantic frolics at the beach, and conflicts between ambitious young people on one hand, and conservative or evil bureaucracies on the other [are] unprotectible. These familiar scenes and themes are among the very staples of modern American literature and film.").

According to plaintiff, *The Saint,* a remake of an old television series about a high-tech thief and master of disguise, also infringes on his works because it contains "scenes of the lead character being kicked out of school, and he later becomes an intelligence officer who takes on the Russians, by breaking into Soviet Intelligence Headquarters for date, and he eventually escapes ." Amended Complaint at 11. These scenes allegedly are similar to *BS & R* because plaintiff "was kicked out of the CIA's Communications school, [was] involved with a Professor and CIA investigator who would not give him names of the students at Bradley University [and] discusses taking on the Russians." *Id.* Plaintiff also suggests that several names in the two works are similar. *Id.* Even if these ersatz similarities were in fact substantially similar, which they are not, they are simply "non-copyrightable concepts or ideas" that cannot support plaintiff's claims. *See Whitehead v. Paramount Pictures Corp., 53 F.Supp.2d at 46, 49* ("[S]cenes a faire, and stock themes or settings that often arise in works of a particular genre ... are not protected.").

Plaintiff also alleges that defendants New Line Cinema, Time Warner, Warner Bros. and unnamed producers, writers and other production companies infringed his copyrights on *BS & R* and *Escape from CIA* by making and/or distributing the film *Most Wanted.* Plaintiff asserts that because both the film and *BS & R* involve a black male who ignores the directives of his supervisor, the works are substantially similar--even though the former involves a Marine company commander and the latter involves a CIA supervisor. Amended Complaint at 18-19. Plaintiff also claims that the works are substantially similar because both involve alleged drugging of an individual by the U.S. government and because both make reference to political assassinations. *Id.* As this Court has noted, such facts and ideas are not copyrightable. *See Whitehead v. Paramount Pictures Corp., 53 F.Supp.2d at 48* ("Race, intelligence, agressiveness, paranoia and

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

athleticism are not copyrightable traits."); *id.* at 51-52 (plaintiff's description of allegedly being drugged does not bar all future writers from depicting scenes of drugging).

### 2. *U.S. Marshal and A Perfect Murder*

**\*9** Plaintiff alleges that defendants Warner Bros., Time Warner and unnamed producers, writers and other production companies infringed his copyrights on *BS & R, Escape from CIA* and *Big Bad Wolf* by making and/or distributing the films *U.S. Marshal* and *A Perfect Murder* and by publishing the novelization of *U.S. Marshal.* Plaintiff alleges that *U.S. Marshal* infringes *BS & R* because, *inter alia,* both he and the star of the movie are black, both dated foreign women, both leap off a building, both are arrested and later released, and both supposedly have a connection with a Chinese agent. Amended Complaint at 22. As Judge Sneed of the Ninth Circuit has noted, however, such familiar scenes and themes "are among the very staples of modern American literature and film. The common use of such stock ... merely reminds us that in Hollywood, as in the life of men generally, there is only rarely anything new under the sun." *Berkic v. Crichton,* 761 F.2d at 1294.

With respect to the supposed similarities between the film *A Perfect Murder* and plaintiff's works, plaintiff suggests that the fact that a character in each has the same name and the fact that both involve adultery is sufficient to prove copyright infringement. As the Court has noted previously, however, because abstract themes are not copyrightable, the types of alleged similarities that plaintiff offers here are too patently frivolous to merit discussion. *See Whitehead v. Paramount Pictures Corp.,* 53 F.Supp.2d at 48 n. 5.

### 3. *Jerry Maguire, How Stella Got Her Groove Back and Why Do Fools Fall in Love*

Plaintiff contends that defendants Columbia, Sony and unnamed producers, writers and other production companies infringed his copyrights on *BS & R* and *Escape from CIA* by making and/or distributing the film *Jerry Maguire.* Plaintiff argues that the film *Jerry Maguire* violates his copyright on his book *BS & R* because both "Jerry Maguire and the Plaintiff give political speeches. They had many affairs with women. Both the plaintiff and Jerry Maguire have a mentor." Amended Complaint at 23. In addition, plaintiff points out that both get fired from their jobs. Plaintiff's December 30, 1999, Response to Defendants' Summary Judgment Motions (unnumbered attachment). [FN7] It should go without saying that these "shared abstract and general character traits do not make the two characters similar for purposes of copyright analysis." *Whitehead v. Paramount Pictures Corp.,* 53 F.Supp.2d at 48. While plaintiff's book is a non-fiction account of the personal tensions that plaintiff experienced as a relatively low-level CIA desk employee, *Jerry Maguire* is a romantic comedy about a sports agent who develops a change of heart about his job and his life. As such, the works as a whole are entirely dissimilar. *See Williams v. Crichton,* 84 F.3d at 590 ("random similarities scattered throughout the works" do not support finding of substantial similarity where works as a whole are not substantially similar).

> FN7. Plaintiff also cites the following "striking similarities": "In both works there is a depiction of the lead character and plaintiff drinking water and having a stress problem;" "In both works the lead character and the plaintiff meets a girl during or after a plane ride;" "In both works there is a depiction of steamy sex;" "In both works there is a depiction of JFK;" "In both works there is a group discussion between women;" and "In both works ... a birthday party was depicted." Plaintiff's December 30, 1999, Response to Defendants' Summary Judgment Motions (unnumbered attachment).

**\*10** Plaintiff also contends that 20th Century Fox, author Terry McMillan and unnamed producers, writers and other production companies infringed his copyrighted novel *Rebecca* by making and/or distributing the film *How Stella Got Her Groove Back.* Plaintiff claims to have been "stunned at the super striking similarities" between his novel *Rebecca* and defendants' film *How Stella Got Her Groove Back.* Amended Complaint at 37. Such "super striking similarities" include the fact that his work and the film involve a "female friendship or relationship" in which friends are "separated by geographical locations," and both involve successful African American women who go on vacation to meet men. *Id.* at 38-39. Aside from the fact that these are general abstract themes and thus not copyrightable, plaintiff cannot avoid the fact that Terry McMillan's novel, on which the film was based, was published in 1996--two years *before* plaintiff published *Rebecca.* Once again, plaintiff's claims are entirely without merit.

Plaintiff also has sued defendant Warner Bros. and unnamed producers, writers and other production

companies for infringing his copyright on *Big Bad Wolf* by making and/or distributing the film *Why Do Fools Fall in Love*. The only alleged similarity that plaintiff cites to demonstrate that the film infringes on his play, however, is the fact that both involve three women. Amended Complaint at 41. Needless to say, such a similarity, standing alone, is insufficient to prove copyright infringement.

### 4. *How Do I Live*

Plaintiff argues that his copyrighted works have inspired at least one song, claiming that defendants WDPT, TWDC and unnamed producers, writers and other production companies infringed his copyright on *Christmas Isn't the Same Without You* by making and/or distributing the song *How Do I Live*. Plaintiff suggests that WDPT and TWDC "retaliated against him for filing a suit in the case in the district court, by obtaining and copying his 1996 song *Christmas Isn't the Same Without You* " and using it to create a song that is used in the motion picture *Con Air*. Amended Complaint at 41. In an attempt to prove substantial similarity, plaintiff asserts that "[t]he themes of both songs are the same" and that "the chorus ending of both songs is the same." *Id.* at 42.

A review of the two works, however, reveals that plaintiff's song is a Christmas song about having lost a loved one, while defendants' song is a general love song about the possibility of losing a loved one. The only similarities between the two songs are that they both are about love and loss and they both include the words "without you." It is difficult to think of a more generic theme in song than love, and the phrase "without you" is far from being unique to plaintiff's work. Because there is no similarity of protectible expression here, much less substantial similarity, plaintiff's copyright claim must fail.

### 5. *Prince of Egypt*

*11 Finally, plaintiff suggests that DreamWorks and unnamed producers, writers and other production companies infringed his copyright on *God v. Satan* by making and/or distributing the animated film *Prince of Egypt*. The only similarity between the two, plaintiff alleges, is the "concept of a bible performance consisting of gospel music and rhythm and blues." Amended Complaint at 43-44. Considering the fact that plaintiff filed the Amended Complaint claiming copyright infringement before *Prince of Egypt* was released and, admittedly, before plaintiff even saw the film, it is not surprising that plaintiff is unable to prove substantial similarity between the two. [FN8] Plaintiff's claim with respect to this film is perhaps the most ludicrous among the many made in his Amended Complaint.

> FN8. Plaintiff admits that his claim of copyright infringement predates the theatrical release of *Prince of Egypt* and relies exclusively on a "news source" for his understanding of the film. *See* Amended Complaint at 42-44.

With respect to this last claim, and indeed with respect to all of his claims, plaintiff has failed to make a showing of substantial similarity because every alleged similarity he has identified "either is not at all similar or is an element that is not copyrightable because it is a fact, an idea or a scene a faire." *Whitehead v. Paramount Pictures Corp., 53 F.Supp.2d at 47.* Accordingly, "no reasonable observer could find [plaintiff's works and the allegedly infringing films, books and song] substantially similar beyond the level of extremely abstract and non-protectible ideas." *Id.* at 48. Because a comparison of the works at issue clearly demonstrates a lack of substantial similarity, plaintiff cannot make a showing of each element of copyright infringement, and summary judgment with respect to plaintiff's claims regarding these films is therefore appropriate. *See Nelson v. Grisham, 942 F.Supp. at 652.*

### D. *Plaintiff's Remaining Claims*

Mr. Whitehead's Amended Complaint sets forth six other claims: (1) unfair competition under 15 U.S.C. §§ 1117, 1125(a), (2) breach of implied contract, (3) bad faith dealings, (4) misappropriation of intellectual material, (5) intentional infliction of emotional distress, and (6) retaliation. *See* Amended Complaint at 46-49. In his Amended Complaint and in subsequent filings, plaintiff only addresses the first two claims: unfair competition and breach of implied contract. [FN9]

> FN9. Plaintiff's allegations of bad faith dealings, misappropriation of intellectual material, intentional infliction of emotional distress and retaliation are listed just below the caption of plaintiff's Amended Complaint, then are not mentioned again.

Plaintiff's unfair competition allegation rests on Sections 1117 and 1125(a) of Title 15 of the United States Code. These two sections specifically address trademark infringement, not copyright infringement, and as such are completely inapplicable to plaintiff's case. In fact, it appears that all of plaintiff's claims are premised upon defendants' alleged infringement

of plaintiff's copyright. Because plaintiff has failed to establish copyright infringement, however, he fails to state a claim that would support any of these six derivative claims. These claims therefore will be dismissed. *See* 17 U.S.C. § 301 (regarding preemptive nature of Copyright Act); *Whitehead v. Paramount Pictures Corp., 53 F.Supp.2d at 53-54*.

### E. Remaining Defendants

*12 In addition to the corporate entities that responded to Mr. Whitehead's Amended Complaint, plaintiff has sued a number of unidentified individuals and companies (including unnamed producers, writers and other production companies), one named individual (author Terry McMillan), and several named corporate entities that have not responded or do not exist independent of the companies that have responded (20th Century Fox, New Line Cinema and Viacom, Inc.). All of these defendants are alleged to have been involved with the films, books and song that plaintiff claims to be derived from his copyrighted works. Plaintiff's claims against these named and unnamed defendants are identical to those asserted against the defendants who have responded to plaintiff's allegations and are premised on the same theories. Plaintiff has had notice and ample opportunity to put forth all of his evidence to oppose summary judgment on these claims. His evidence simply is insufficient. On the basis of the foregoing analysis, summary judgment will be entered *sua sponte* for the remaining defendants. *See Celotex Corp. v. Catrett*, 477 U.S. at 326 (courts have power to enter summary judgment *sua sponte*, "so long as the losing party was on notice that [he] had to come forward with all of [his] evidence"); *Athridge v. Rivas*, 141 F.3d 357, 361 (D.C.Cir.1998) (same).

### IV. ATTORNEYS' FEES AND COSTS

Defendants have requested an award of attorneys' fees and costs pursuant to 17 U.S.C. § 505. *See* Paramount's Motion for Summary Judgment at 10; DreamWorks' Motion for Summary Judgment at 14-15; Columbia Defendants' Motion for Summary Judgment at 16-18. Under the Copyright Act, the Court in its discretion may "allow the recovery of full costs by or against any party .... [T]he court may also award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505. While attorneys' fees and costs should not be awarded as a matter of course, they are equally available to prevailing plaintiffs and to prevailing defendants in actions under the Copyright Act. *See Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994).

Like the first copyright infringement case brought by Mr. Whitehead in this Court, *Whitehead v. Paramount Pictures Corp*, Civil Action No. 96-2436, this case is patently frivolous, and it therefore presents a very strong case for an award of attorneys' fees and costs to the defendants. *See Fogerty v. Fantasy, Inc.*, 510 U.S. at 534 n. 19 (court may consider variety of factors including frivolousness, motivation, objective unreasonableness, and "the need in particular circumstances to advance considerations of compensation and deterrence.") (citing *Lieb v. Topstone Industries, Inc.*, 788 F.2d 151, 156 (1986)). The Court declined to award attorneys' fees to defendants in *Paramount Pictures*, but gave plaintiff fair warning:

> This case is patently frivolous, and Mr. Whitehead's claims are objectively unreasonable. The case therefore presents a very strong one for an award of attorneys' fees and costs to the defendants. Moreover, it appears that some sort of sanction such as an award of attorneys' fees and costs may be necessary to deter Mr. Whitehead from filing additional frivolous actions .... The Court will not exercise its discretion to award attorneys' fees in this case, primarily because Mr. Whitehead filed this complaint *pro se,* and this is one of the earlier copyright actions that he filed. Mr. Whitehead should be advised, however, that if the other cases currently pending before this Court are as completely lacking in merit as are the claims in this action, the Court very well may award attorneys' fees and costs to the defendants in those actions.

*13 *Whitehead v. Paramount Pictures Corp.*, 53 F.Supp.2d at 54-55.

After this first warning, the Court continued to suggest to plaintiff that he should consider the merits of his claims before proceeding with this case and reminded him of the Copyright Act's fee shifting provision. *See* Memorandum Opinion and Order of Sept. 9, 1999; Order of Sept. 30, 1999; Order of Oct. 21, 1999; Order of Nov. 18, 1999; Order of Dec. 9, 1999; Order of Dec. 17, 1999. Plaintiff ignored those warnings, inundating the Court with paper and requiring a substantial amount of work on the part of defendants' lawyers. The Court could not have been clearer in communicating to plaintiff that if his claims in this case and others were as frivolous as those previously dismissed, the Court would not hesitate to award attorneys' fees and costs in the future. The future is now. Attorneys' fees will be awarded.

An Order and a separate Judgment consistent with

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  
2001 WL 1218908 (D.D.C.)  
**(Cite as: 2001 WL 1218908 (D.D.C.))**

Page 11

this Opinion shall be issued this same day.

SO ORDERED.

2001 WL 1218908 (D.D.C.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.