Westlaw.

Slip Copy                                                                                                                     Page 1
Slip Copy, 2005 WL 1026703 (D.D.C.), 30 NDLR P 110
(Cite as: 2005 WL 1026703 (D.D.C.))

**Motions, Pleadings and Filings**

United States District Court,
District of Columbia.
Kevin BARRY, Plaintiff,
v.
UNITED STATES CAPITOL GUIDE BOARD,
Defendant.
No. Civ.A. 04-0168(RBW).

Filed Feb. 5, 2004.
May 2, 2005.

R. Scott Oswald, Employment Law Group, PLLC, Washington, DC, Lead Attorney, Attorney to be Noticed, for Kevin Barry, Plaintiff.

Toby R. Hyman, Office of Senate Chief, Counsel for Employment, Washington, DC, Lead Attorney, Attorney to be Noticed, Julie E. Saker, Office of Senate Chief, Counsel for Employment, Alexandria, VA, Attorney to be Noticed, Jean Marie Manning, Office of Senate Chief, Counsel for Employment, Washington, DC, Attorney to be Noticed, for United States Capitol Guide Service, Defendant.

Toby R. Hyman, Lead Attorney, Attorney to be Noticed, Julie E. Saker, Jean Marie Manning, (See above for address), Attorney to be Noticed, for United States Capitol Board, Defendant.

*MEMORANDUM OPINION*

WALTON, J.

*1 The plaintiff filed this action pursuant to the Congressional Accountability Act of 1995 ("CAA"), 2 U.S.C. § 1371(a) seeking to recover damages from the defendant, the United States Capitol Guide Board ("Guide Board"), for its alleged unlawful actions related to the termination of his employment. [FN1] Complaint ("Compl.") ¶ ¶ 1-2. The defendant has now filed a motion to dismiss, or in the alternative, for summary judgment, [FN2] arguing that the plaintiff cannot establish (1) a causal connection between his alleged protected activity and the unlawful employment action or (2) that the defendant's legitimate, nondiscriminatory reason for terminating his employment was a pretext for discrimination. Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment ("Def.'s Mot. for Summ. J.") at 1. The plaintiff, however, seeks to stay consideration of the defendant's summary judgment motion and to permit discovery pursuant to Federal Rule of Civil Procedure 56(f). [FN3] For the following reasons, this Court grants the plaintiff's motion to permit discovery and denies without prejudice the defendant's motion to dismiss, or in the alternative, for summary judgment.

FN1. The plaintiff originally brought this action against both the Guide Board and the United States Capitol Guide Service ("Guide Service"). On October 12, 2004, the plaintiff filed a notice of voluntary dismissal of the Guide Service pursuant to Rule 41(a)(1)(I), thereby leaving the Guide Board as the sole defendant in the case.

FN2. Specifically, before the Court are: (1) the defendant's Motion to Dismiss the Amended Complaint ("Def.'s Mot. to Dismiss"); (2) the defendant's Motion to Dismiss, or in the Alternative, for Summary Judgment (Def.'s Mot. for Summ. J."); (3) the defendant's Statement of Points and Authorities in Support of its Motion to Dismiss or, in the Alternative, for Summary Judgment ("Def.'s Statement of Points"); (4) the defendant's Statement of Undisputed Material Facts in Support of Its Motion to Dismiss or, in the Alternative, for Summary Judgment (Def.'s Statement of Material Facts"); (5) the plaintiff's Statement of Points and Authorities in Opposition to Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment ("Pl.'s Opp'n"); and (6) the defendant's Reply to Plaintiff's Opposition to Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment ("Def.'s Reply").

FN3. Before the Court are: (1) the plaintiff's Motion to Stay Consideration of Defendant's Motion for Summary Judgment, and to Permit Discovery, Pursuant to Rule 56(f) ("Pl.'s Mot."), (2) the plaintiff's Memorandum in Support of the Plaintiff's Motion to Stay Consideration of Defendant's Motion for Summary Judgment, and to

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Permit Discovery, Pursuant to Rule 56(f) ("Pl.'s Mem."), (3) the defendant's Opposition to Plaintiff's Motion to Stay Consideration of Defendant's Motion for Summary Judgment, and to Permit Discovery, Pursuant to Rule 56(f) ("Def.'s Opp'n"), and (4) the plaintiff's Reply to Defendant's Opposition to Plaintiff's Motion to Stay Consideration of Defendant's Motion for Summary Judgment and to Permit Discovery Pursuant to Rule 56(f) ("Pl.'s Reply").

I. *Background*

Congress created the United States Capitol Guide Service ("Guide Service") to provide guided tours of the "United States Capitol Building for the education and enlightenment of the general public." 2 U.S.C. § 2166(a) (2004). The Guide Service is subject "to the direction, supervision, and control of the Guide Board, which consists of the Architect of the Capitol, the Sergeant at Arms of the Senate, and the Sergeant of Arms of the House of Representatives. *Id.* The plaintiff, who is deaf, and, as such, is allegedly a qualified individual with a disability as defined by the Rehabilitation Act of 1973, 29 U.S.C. § 791 and the Americans with Disabilities Act of 1990, 42 U.S.C. § 1211(8), began his employment with the Guide Service on January 1, 1994, as a guide. Compl. ¶¶ 9, 10. According to the plaintiff, as an employee of the Guide Service and the Guide Board, [FN4] which are "employing offices" [FN5] under the CAA, his employment falls under the CAA. *Id.* ¶¶ 5, 7; *see* 2 U.S.C. § 1301(3)(C), (9)(D) (2004).

> FN4. A "covered employee" means an employee of the Guide Service. 2 U.S.C. § 1301(3).

> FN5. An "employing office" means the Guide Board. 2 U.S.C. § 1301(9)(D).

In 1996, the plaintiff applied for the position of Chief Guide with the Guide Service but was not selected. *Id.* ¶¶ 12, 13. Rather, another employee, who is not disabled, and according to the plaintiff less qualified than him, was selected for the position. *Id.* ¶ 13. The plaintiff opines that his non-selection was due solely and proximately to the plaintiff's disability and need for sign language interpreter services. *Id.* ¶ 15. On March 4, 1996, the plaintiff requested counseling with the Office of Compliance ("OC") regarding his non-selection and subsequently had two meditation meetings with the OC. During the second meeting, the counsel for the Guide Service asserted that the plaintiff's non-selection was not because of discrimination. In June, 1996, the plaintiff received a "Memorandum of Serious Misconduct," which alleged that he had engaged in sexual harassment and that the allegations had arisen during the investigation of the plaintiff's failure to promote complaint. *Id.* ¶¶ 17, 18. This memorandum was placed in the plaintiff's personnel file. *Id.* ¶ 21. In March, 1997, the plaintiff filed a formal administrative complaint, which alleged discrimination regarding the promotion denial and also retaliation against him when he was not provided an opportunity to rebut the sexual harassment charges. *Id.* ¶¶ 24-27. Following the filing of this complaint, an investigation ensued and all adverse references to the "Memorandum of Serious Misconduct" were removed from the plaintiff's personnel records. *Id.* ¶ 28.

*2 Over the next 6 years, the plaintiff alleges that his supervisor "bore a grudge" against him, which manifested in the creation of a difficult work environment. *Id.* ¶ 30. The plaintiff alleges that on one occasion, his supervisor told his interpreter in September, 1997 that "it takes two people to do [the plaintiff's] job," telling the interpreter that, because of his hearing impairment, the plaintiff caused the Guide Service to have to pay two people to perform one job. *Id.* ¶ 31. The supervisor purportedly told the plaintiff's interpreter "that she would not be getting a salary increase," which resulted in the interpreter leaving for a better paying job. *Id.* ¶¶ 33, 35. After the interpreter's departure and until his termination, the plaintiff was allegedly denied the services of a full time interpreter; rather, he was instructed by his supervisor to use the interpreters at the Congressional Special Services Office ("CSSO"), which is part of the Guide Service, Def.'s Mot. for Summ. J. at 4, where he had to make an appointment and "wait [his] turn." *Id.* ¶¶ 36, 37. As further proof of his hostile work environment claim, the plaintiff alleges that information on policy changes and tour information were withheld from him, making him appear incompetent and ignorant in front of his peers. *Id.* ¶¶ 42-44. The plaintiff also opines that he was treated in a disparate manner from his similarly situated co-workers when he asked to take vacation and bereavement leave. *Id.* ¶¶ 50-54.

In June, 2003, the plaintiff had a conversation with a coworker, who was an interpreter temporarily working with the CSSO. *Id.* ¶ 56. In this conversation, the plaintiff allegedly asked the interpreter about her ethnic background and he told her that he thought she was Spanish, *id.* at 58, even

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

though she is a third-generation American. Def.'s Mot. for Summ. J. at 7. In a separate conversation, the plaintiff allegedly asked the same interpreter if she was gay. Compl. ¶ 60. After learning about these conversations, the Assistant Director of the CSSO and the Director of the Visitor Services commenced an investigation. Def.'s Mot. for Summ. J. at 6. The investigation allegedly revealed that the plaintiff told the interpreter that she would not want to work at the Guide Board for various reasons. *Id.* at 7. At the time these alleged statements were made, the interpreter was working as a temporary contract interpreter in order for her to assess whether she would have liked to work for the CSSO if she had been given an offer of employment. *Id.* at 5.

On July 15, 2003, following the completion of the investigation, the plaintiff's employment with the Guide Service was terminated. *Id.* ¶¶ 65-68. The Director concluded that the plaintiff was disloyal for undercutting CSSO's efforts to hire a qualified interpreter by trying to convince her not to take the job. Def.'s Mot. for Summ. J. at 11. Moreover, the Director did not find the plaintiff's statements made during the investigation credible and concluded that the plaintiff displayed poor judgment and unprofessional conduct as a manager. *Id.* The plaintiff argues, however, that his conversations with his coworker were innocuous and hence, his termination was really in retaliation for the complaints he filed in 1996 and 1997. Compl. ¶ 69. Accordingly, the plaintiff commenced this action alleging that the Guide Board retaliated against him for engaging in protected activity under the CAA and that the Guide Board violated the CAA, when it terminated his employment in July, 2003. *Id.* ¶¶ 2, 70, 79, 81.

## II. *The Parties' Arguments*

*3 The defendant seeks to have the complaint dismissed, or in the alternative, moves for summary judgment. The defendant posits that the plaintiff cannot establish a *prima facie* case of retaliation because he cannot establish a causal link between the alleged protected activity and the purported adverse employment action and thus the complaint should be dismissed. Def.'s Mot. for Summ. J. at 14. Moreover, the defendant argues that even assuming the plaintiff's ability to establish a *prima facie* case of retaliation, the plaintiff cannot show that the defendant's articulated legitimate, non-discriminatory reason for terminating his employment was a pretext for retaliation and thus they are entitled to summary judgment. *Id.* at 21-22.

In response, the plaintiff seeks to stay consideration of the defendant's motion for summary judgment and to permit the plaintiff time to conduct discovery pursuant to Federal Rule of Civil Procedure 56(f). Specifically, the plaintiff asserts that he cannot factually challenge the defendant's summary judgment motion without the opportunity to conduct discovery and that the plaintiff has raised meritorious allegations of bad faith, civil rights violations, and improper conduct on the part of the defendant that warrant his opportunity to conduct discovery. Pl.'s Mem. at 1-2. In support of his motion, the plaintiff included the affidavit of R. Scott Oswald, Esq. ("Oswald Aff."). The defendant argues that the plaintiff's motion to permit discovery should be denied because the plaintiff has neither identified any facts he intends to discover that would create a triable issue, nor explained why he cannot produce them without discovery. *See* Def.'s Opp'n. at 2, 4-5. The defendant opines in the alternative that if the Court permits discovery, then the scope of such discovery should be limited to the facts necessary to oppose the defendant's motion for summary judgment. *Id.* at 7.

## III. *Standard of Review*
(A) Motion to Dismiss Under Rule 12(b)(6)

On a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), this Court must construe the allegations and facts in the complaint in the light most favorable to the plaintiff and must grant the plaintiff the benefit of all inferences that can be derived from the facts alleged. *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957); *Barr v. Clinton,* 370 F.3d 1196, 1199 (D.C.Cir.2004) (citing *Kowal v. MCI Communications Corp.,* 16 F.3d 1271, 1276 (D.C.Cir.1994)). However, the Court need not accept asserted inferences or conclusory allegations that are unsupported by the facts set forth in the complaint. *Kowal,* 16 F.3d at 1276. In deciding whether to dismiss a claim under Rule 12(b)(6), the Court can only consider the facts alleged in the complaint, documents attached as exhibits or incorporated by reference into the complaint, and matters about which the Court may take judicial notice. *EEOC v. St. Francis Xavier Parochial Sch.,* 117 F.3d 621, 624-25 (D.C.Cir.1997). The Court will dismiss a claim pursuant to Rule 12(b)(6) only if the defendant can demonstrate "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley,* 355 U.S. at 45-46.

(B) Motion for Summary Judgment Under Rule 56

*4 Under Rule 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact...." Fed.R.Civ.P. 56(c). All evidence must be viewed "in the light most favorable" to the nonmoving party. *Info. Handling Servs., Inc., v. Def. Automated Printing Servs.,* 338 F.3d 1024, 1032 (D.C.Cir.2003) (citing *Waterhouse v. District of Columbia,* 298 F.3d 989, 991 (D.C.Cir.2002)). However, summary judgment should ordinarily be entered only after the plaintiff has been given "adequate time for discovery." *Anderson v. Liberty Lobby,* 477 U.S. 242, 257 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Info. Handling Servs., Inc.,* 338 F.3d at 1032. And district courts are afforded substantial discretion to manage discovery as they see fit. *Stella v. Mineta,* 284 F.3d 135, 147 (D.C.Cir.2002).

"The court must give a party opposing summary judgment an adequate opportunity to obtain discovery." *Radich v. Goode,* 886 F.2d 1391, 1391 (3d Cir.1989) (citing *Dowling v. Philadelphia,* 855 F.2d 136, 139 (3d Cir.1988)). Courts have noted that pre-discovery summary judgment motions are premature and should only be used for exceptional circumstances. *Patton v. Gen. Signal Corp.,* 984 F.Supp. 666, 669 (W.D.N.Y 1997). One such circumstance is when a motion for summary judgment is made before discovery has ended and there is no genuine issue of material fact. *Brill v. Lante Corp.,* 119 F.3d 1266, 1275 (7th Cir.1997). However, even if the parties have not commenced discovery, if the plaintiff has failed to present any genuine issues of material facts, then the defendant's motion for summary judgment may be granted. *Raymond v. United States Capitol Police Bd.,* 157 F.Supp.2d 50, 55 (D.D.C.2001).

In order to show that there are genuine issues of fact for trial, the nonmoving party must "go beyond the pleadings," marshaling evidence culled from its own affidavits, or by the depositions, answers to interrogatories, and admissions on file. *Celotex,* 477 U.S. at 324; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986) (holding that the adverse party must do more than simply "show that there is some metaphysical doubt as to the material facts"). Rule 56(f) states that if it "appears from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had...." Fed.R.Civ.P. 56(f). Rule 56(f) motions should be granted "almost as a matter of course unless the nonmoving party has not diligently pursued discovery of the evidence ." *Berkeley v. Home Ins. Co.,* 68 F.3d 1409, 1414 (D.C.Cir.1995) (citing *Wichita Falls Office Assoc. v. Banc One Corp.,* 978 F.2d 915, 919 n. 4 (5th Cir.1992). "The purpose of 56(f) is to provide non-movants with a much needed tool to keep open the doors of discovery in order to adequately combat a summary judgment motion ." *Wichita Falls Office Assoc.,* 978 F.2d at 919.

IV. *Legal Analysis*

*5 It is helpful to begin the Court's analysis by briefly reviewing the well-established framework for establishing retaliation. Similar to employment discrimination claims, a claim of retaliation is governed by the *McDonnell Douglas Corp. v. Green* burden-shifting framework. *Holbrook v. Reno,* 196 F.3d 255, 263 (D.C.Cir.1999); *see McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-03 (1973); *see also Lathram v. Snow,* 336 F.3d 1085, 1089 n. 3 (D .C. Cir.2003) ("The *McDonnell Douglas* framework, with some differences in the phrasing of the *prima facie* case, applies to [the plaintiff's] claim of unlawful retaliation.") (citing *Morgan v. Fed. Home Loan Mortg. Corp.,* 328 F.3d 647, 651 (D.C.Cir.2003)). In order to establish a *prima facie* case of retaliation, the plaintiff must demonstrate: (1) that he engaged in a statutorily protected activity; (2) that his employer took an adverse personnel action; and (3) that a causal connection existed between the two events. *Mitchell v. Baldrige,* 759 F.2d 80, 86 (D .C. Cir.1985). If the plaintiff is successful in proving a *prima facie* case of retaliation, then the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse action. *Holbrook,* 196 F.3d at 263. The employee must then prove by a preponderance of the evidence that the asserted reason offered by the defendant was a pretext for retaliation. *Id.* (citing *McKenna v. Weinberger,* 729 F.2d 783, 790 (D.C.Cir.1984); *see Trawick v. Hantman,* 151 F.Supp.2d 54, 60 (D.D.C.2001) (referring to the *McDonnell Douglas* framework and requiring evidence to reveal that the defendant's proffered reason was a pretext for employment discrimination). [FN6]

> FN6. The McDonnell Douglas framework applies to employment discrimination cases brought under the CAA. *See Singh v. United States House of Representatives,* 300

F.Supp.2d 48, 53 (D.D.C.2004); _Raymond v. United States Capitol Police Board,_ 157 F.Supp.2d 50, 55-56 (D.D.C.2001); _Trawick v. Hantman,_ 151 F.Supp.2d 54, 60-61 (D.D.C.2001).

(A) Defendant's Motion to Dismiss

The defendant seeks to dismiss the complaint alleging that while the plaintiff did engage in statutorily protected activity and he was affected by adverse personnel action, the plaintiff cannot establish a causal connection between his participation in that protected activity and his termination, which occurred more than six years later. Def.'s Mot. for Summ. J. at 14. The defendant emphasizes that the temporal proximity between an employer's knowledge of the plaintiff's protected activity and an adverse employment action must be relatively close in time to establish the causal connection. _Id._ at 15. However, " '[t]emporal proximity is but one method of proving retaliation. Evidence of discriminatory or disparate treatment in the time period between the protected activity and the adverse employment action can be sufficient to show a causal connection." ' _Buggs v. Powell,_ 293 F.Supp.2d 135, 149 (D.D.C.2003) (quoting _Che v. Mass. Bay Transp. Auth.,_ 342 F.3d 31, 38 (1st Cir.2003)). Thus, the Third Circuit in _Kachmar v. SunGard Data Sys., Inc.,_ 109 F.3d 173 (3d Cir.1997) stated

> that where there is a lack of temporal proximity, circumstantial evidence of a 'pattern of antagonism' following the protected conduct can also give rise to the inference. These are not the exclusive ways to show causation, as the proffered evidence, looked at as a whole, may suffice to raise the inference.

*6 _Id._ at 177 (internal citations and quotations omitted).

Viewing the facts set forth in the complaint in the light most favorable to the plaintiff, it is clear that after drawing all appropriate inferences in his favor, that the plaintiff has stated a claim of retaliation even though its proximity to the protected activity would not alone support the claim. _Buggs,_ 293 F.Supp.2d at 149. Of particular importance to the Court is the fact that the plaintiff's supervisor during the time between the protected activity and the adverse employment action was the individual who was promoted to the position for which the plaintiff had also applied. While under his prior competitor's supervision, the plaintiff identifies three similarly situated co-employees and he alleges that while their respective levels of responsibility and work loads were comparable, his co-employees received larger annual pay increases from his supervisor than he did. Compl. ¶ 40. In addition, the supervisor allegedly accorded less favorable treatment to the plaintiff when he allowed the plaintiff three days of bereavement leave, whereas he afforded other Guide Service employees a full week in similar situations. Compl. ¶¶ 50-51, 53; Pl.'s Opp'n at 5. The plaintiff alleges that his supervisor made a practice of withholding policy changes and tour information from him, which caused him to appear incompetent in front of his peers. Compl. ¶¶ 42-43. According to the plaintiff, the supervisor did not investigate his complaint of insubordination of a tour guide who was under the plaintiff's supervision, even though the supervisor purportedly investigated complaints of insubordination by other employees. Compl. ¶¶ 47-49; Pl.'s Opp'n at 4. Collectively, this evidence is sufficient to establish a "pattern of antagonism" that the plaintiff was subjected to following his participation in the statutorily protected activity. _Buggs,_ 293 F.Supp.2d at 149. Thus, based upon the allegations in the complaint, and at this stage of the proceedings, it would not be appropriate for this Court to determine whether the plaintiff will succeed on this claim. Rather, unless discovery indicates otherwise, that determination is best left to a fact-finder. _See, e.g., Anderson,_ 477 U.S. at 255 ("[D]rawing ... legitimate inferences from the facts are jury functions, not those of a judge...."). Therefore, the Court must deny the defendant's motion to dismiss because the defendant has not demonstrated "beyond a doubt that the plaintiff cannot prove any set of facts in support of his claim which would entitle him to relief." _See Conley,_ 355 U.S. at 45-46.

(B) Defendant's Motion for Summary Judgment

The defendant also seeks summary judgment, alleging that the plaintiff cannot rebut the defendant's legitimate, nondiscriminatory reason for terminating his employment. Def.'s Mot. for Summ. J. at 21-22. As discussed above, once a defendant has articulated a legitimate, nondiscriminatory reason for the employment action, "the McDonnell Douglas framework--with its presumptions and burdens--disappear[s], and the sole remaining issue [is] '[retaliation] _vel non._" ' _Reeves v. Sanders Plumbing Prods., Inc.,_ 530 U.S. 133, 142-43 (2000). Thus, to survive the defendant's motion for summary judgment, the plaintiff must show that a jury could conclude "by a preponderance of the evidence that the asserted reason is a pretext for retaliation."

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*Holbrook*, 196 F.3d at 263. To do so, this Court must consider whether a jury could infer retaliation from: (1) the plaintiff's *prima facie* case; (2) any evidence the plaintiff presents to attack the employee's proffered reason; and (3) any further evidence available to the plaintiff. *See, e.g., Waterhouse v. District of Columbia*, 298 F.3d 989, 992-93 (D.C.Cir.2002).

*7 This inquiry is necessarily fact intensive and granting a motion for summary judgment on this issue prior to providing the parties with any opportunity for discovery is clearly contrary to this Circuit's precedent. *See Paquin v. Fed. Nat'l Mortgage Ass'n*, 119 F.3d 23, 28-29 (D.C.Cir.1997) (reversing district court's denial of the plaintiff's Rule 56(f) motion because the plaintiff should have been provided the opportunity to conduct discovery to garner facts to refute the defendant's legitimate non-discriminatory reason for the alleged adverse employment action); *Velikonja v. Muller*, 315 F.Supp.2d 66, 78-80 (D.D.C.2004) (finding that Rule 56(b) motion should be granted "[b]ecause it [was] unclear based on the undeveloped record whether plaintiff [would] be able to proffer evidence" to refute the defendant's articulated legitimate, non-discriminatory reason for his actions).

Similar to this case, the plaintiffs in *Paquin* and *Velikonja* opposed the defendants' motions for summary judgment on the ground that further discovery was necessary in order to demonstrate pretext. *Paquin*, 119 F.3d at 28; *Velikonja*, 315 F.Supp.2d at 79. For example, the defendant in *Paquin* explained that the plaintiff's termination was based on his written performance evaluation and the court noted that comparable evaluations of other executives at the plaintiff's level were the type of evidence that might reveal the defendant's explanations as a pretext for discrimination. *Paquin*, 119 F.3d at 28. And in *Velikonja*, the plaintiff had yet to conduct any depositions in order to attempt to make his case, and the court recognized that granting summary judgment at that stage of the proceedings would have been "premature." *Velikonja*, 315 F.Supp.2d at 80.

Here, the plaintiff asserts that he has not had the opportunity to conduct any discovery and based on his complaint and his attorney's affidavit, such discovery may likely reveal disputed issues of material fact. It is simply impossible at this time for this Court to determine whether there is a genuine issue as to whether the plaintiff's termination was because of the alleged inappropriate conduct he committed in 2003 or was in retaliation for his 1996 and 1997 statutorily protected activity. Thus, the plaintiff must be afforded the opportunity to engage in discovery so that he may attempt to acquire evidence to rebut the defendant's alleged legitimate and nondiscriminatory reason for his termination. [FN7] Therefore, this case does not merit summary judgment being awarded to the defendant at this time and the motion will be dismissed without prejudice. [FN8] *See Americable Int'l, Inc. v. Dep't of Navy*, 129 F3d 1271, 1274 (D.C.Cir.1997) (noting that summary judgment may well be in order if after discovery, the court determines that there are no genuine issues as to any material fact).

> FN7. For example, such discovery may lead to evidence that the plaintiff was treated differently than other similarly situated employees. *See, e.g., Paquin*, 119 F.3d at 28; *Velinkonja*, 315 F.Supp.2d. at 80-81.

> FN8. At the conclusion of discovery, the defendant may, if it feels it is proper, file a renewed motion for summary judgment.

(C) Scope of Discovery

The defendant argues that if this Court grants the plaintiff's Rule 56(f) motion, the scope of the plaintiff's discovery should be limited to efforts to disclose facts necessary to oppose the defendant's motion. Under Rule 56(f), if the party opposing a motion for summary judgment

> *8 cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Rule 56(f). Courts frequently invoke Rule 56(f) to provide for limited discovery when, for example, an initial period of discovery has already occurred if additional discovery is necessary to oppose a summary judgment motion. *See e.g., Stella*, 284 F.3d at 147 (remand to district court for its determination as to whether *additional* discovery was required); *Richardson v. Nat'l Rifle Ass'n*, 871 F.Supp. 499 (D.D.C.1994) (requiring that a party opposing summary judgment alert the court to the need for *further* discovery); *Am. Broad. Co., v. United States Info. Agency*, 599 F.Supp. 765, 768 (D.D.C.1984) (contemplating situations in which additional discovery is needed).

Such is not the case here, as no discovery has yet

taken place and the plaintiff has had no opportunity to develop a factual record to support his claims. Thus, in light of the allegations raised in the complaint, this Court concludes that it is more appropriate to permit full discovery so as to afford the plaintiff "a 'reasonable opportunity to present all material made pertinent to such a motion by Rule 56' and a chance 'to pursue reasonable discovery." ' *Taylor v. FDIC*, 132 F.3d 753, 765 (D.C.Cir.1997) (quoting *First Chicago Int'l v. United Exch. Co., Ltd.*, 836 F.2d 1375, 1380 (D.C.Cir.1988)) (emphasis added). Under Rule 26, discovery is permitted of "*any* matter, not privileged, which is relevant to the subject matter involved in the pending action." Fed.R.Civ.P. 26(b)(1) (emphasis added). While "Rule 26 vests the trial judge with broad discretion to tailor discovery narrowly," *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998), this Court can find no reason to mandate such a limitation here. Accordingly, this Court finds it appropriate to afford the plaintiff "an opportunity to make *full* discovery." *Celotex*, 477 U.S. at 326 (emphasis added).

### V. *Conclusion*

Based on the foregoing analysis, and viewing the facts in a light most favorable to the plaintiff, the defendant's dismissal motion must be denied because the defendant has not demonstrated beyond doubt that the plaintiff can prove no set of facts in support of his claim. Moreover, the plaintiff must be afforded the opportunity to conduct discovery so he can attempt to develop evidence to contest the defendant's motion for summary judgment. Therefore, considering the defendant's motion for summary judgment at this time is inappropriate. Consequently, this Court must grant the plaintiff's motion to stay consideration of the defendant's summary judgment motion until discovery is conducted, and deny the defendant's motion for summary judgment without prejudice.

*9 SO ORDERED. [FN9]

> FN9. An Order consistent with this Court's Memorandum Opinion is issued herewith.

### ORDER

Upon consideration of the defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment and the plaintiff's Motion to Stay Consideration of Defendant's Motion for Summary Judgment, and to Permit Discovery, the reasons set forth in the accompanying Memorandum Opinion, it is hereby

ORDERED that the plaintiff's motion to stay consideration of summary judgment and to permit discovery is GRANTED.

ORDERED that the defendants's motion to dismiss is DENIED.

ORDERED that the defendants's motion for summary judgment is DENIED without prejudice.

SO ORDERED.

Slip Copy, 2005 WL 1026703 (D.D.C.), 30 NDLR P 110

**Motions, Pleadings and Filings (Back to top)**

• 2004 WL 2056974 (Trial Motion, Memorandum and Affidavit) Plaintiff Kevin Barry's Opposition to Defendant's Emergency Motion to Seal Confidential Portions of the Amended Complaint (Jun. 14, 2004)

• 2004 WL 2056968 (Trial Motion, Memorandum and Affidavit) Plaintiff Kevin Barry's Response to Defendant's Emergency Motion to Seal Confidential Portions of the Complaint (Jun. 07, 2004)

• 1:04cv00168 (Docket) (Feb. 05, 2004)

• 2004 WL 2056957 (Trial Pleading) Amended Civil Complaint for Equitable and Monetary Relief and Demand for Jury%n1%n (2004)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.